United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 27, 2004**

Charles R. Fulbruge III
Clerk

REVISED OCTOBER 13, 2004

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

————————

No. 03-30023

————————

UNITED STATES OF AMERICA, ex rel.
RONALD K. BAIN,

                                        Plaintiffs-Appellees,

        versus

GEORGIA GULF CORP,

                                        Defendant-Appellant.

————————

Appeal from the United States District Court
for the Middle District of Louisiana

————————

Before GARWOOD, HIGGINBOTHAM, and SMITH, Circuit Judges.

GARWOOD, Circuit Judge:

        Defendant-appellant Georgia Gulf Corporation (Georgia Gulf)

brings this appeal under 28 U.S.C. § 1292(b) challenging the

district court's denial of its 12(b)(6) motion to dismiss and

alternative Rule 56 motion for summary judgment, as well as the

district court's ruling that plaintiff-relator-appellee Ronald K.

Bain (Bain) stated a claim under the False Claims Act (FCA), 31 U.S.C. § 3729(a)(7), and that he pleaded his claim under that statute with sufficient particularity as required by Federal Rule of Civil Procedure 9(b). We reverse and remand this case for further proceedings.

**Facts and Proceedings Below**

This is a *qui tam* action under the False Claims Act (FCA), 31 U.S.C. § 3729 *et seq.*, filed by plaintiff-relator Bain on July 13, 2001. The government declined to intervene on November 8, 2001, and the district court unsealed the complaint and ordered it served on Georgia Gulf. The case is now before this court on the defendant Georgia Gulf's interlocutory appeal from the district court's order denying Georgia Gulf's motion to dismiss the complaint under FED. R. CIV. P. 12(b)(6) (and 9(b)).

Bain began his employment with Georgia Gulf in Plaquemine, Louisiana in 1982. One of the primary products manufactured by Georgia Gulf at its chemical facility in Plaquemine is polyvinyl chloride (PVC), which is a known carcinogen. The PVC is produced in eighteen reactors which must be routinely opened in order to conduct physical inspections. When the reactors are opened, vinyl chloride is released into the atmosphere. This is known as "open lid loss." The complaint alleges that "[p]ursuant to the laws of the United States of America and the State of Louisiana, including the rules and regulations of and permits issued by the Louisiana

2

Department of Environmental Quality ("LDEQ") and the Environmental Protection Agency ("EPA"), Georgia Gulf is required to monitor and report emissions of vinyl chloride which occur during the production of PVC."

The complaint states that Bain was transferred "in late 1994 or early 1995" to the PVC unit to work as a "top deck operator." His responsibilities included monitoring and measuring releases of vinyl chloride during open lid losses and then recording the amount of each release into the "open lid loss logs." These logs were then submitted to the Environmental Protection Agency (EPA) and the Louisiana Department of Environmental Quality (LDEQ).

The complaint alleges that "[w]hen relator commenced employment as a top deck operator in the PVC unit he learned" that it was Georgia Gulf's "standard operating procedure" to vent vinyl chloride into the atmosphere without monitoring or measuring the releases and then to make false records of the emissions during open lid loss. They in turn allegedly routinely and knowingly submitted these false records to the EPA and LDEQ. The complaint alleges in general terms that this practice "was in contravention of 31 U.S.C. § 3729(a)(7)," the reverse false claims provision of the FCA, because "the actions of Georgia Gulf have deprived the United States of America and State of Louisiana of fines, and other monetary assessments which would have been made had the actions of Georgia Gulf not been concealed."

On April 22, 2002, Georgia Gulf moved to dismiss the complaint

3

pursuant to Federal Rule of Civil Procedure 12(b)(6), but on June 19, 2002, the district court ordered that Bain first amend his complaint to comply with Rule 9(b), and gave him twenty days in which to do so.[1]  Accordingly, Bain filed an amended complaint on July 10, 2002 that (a) added miscellaneous allegations related to his section 3729(a)(7) reverse false claim concerning avoidance of fines for excessive vinyl chloride emissions during open lid loss by making false records of such emissions;[2] *and* (b) added an

---

[1] Defendants assert that initially Bain's complaint against Georgia Gulf was nearly identical to the complaint that had been filed by the relator in a similar case, *United States, ex rel. John Doe v. Dow Chemical Co.*, 343 F.3d 325 (5th Cir. 2003).  This court held in *Dow* that the plaintiff had failed to properly plead his FCA claim with particularity.

[2]The following allegations in this respect were added:
"At all material times herein, the polyvinyl chloride unit at the Georgia Gulf facility in Plaquemine, Louisiana was subject to the various regulations promulgated by the Louisiana Department of Environmental Quality and the Environmental Protection Agency.  It is specifically alleged that the polyvinyl chloride unit at Georgia Gulf was subject to the provisions of the Clear Air Act, 42 U.S.C. § 7401, et seq."
. . .
"Prior to 1995, Georgia Gulf was investigated and fined by the Louisiana Department of Environmental Quality and the Environmental Protection Agency for irregularities pertaining to emissions of vinyl chloride from the polyvinyl chloride unit at Georgia Gulf."
. . .
"From at least 1995 through 1998, Georgia Gulf routinely and knowingly submitted false and fraudulent records of vinyl chloride emissions from the polyvinyl chloride unit to the Louisiana Department of Environmental Quality and Environmental Protection Agency."
. . .

4

entirely new claim, namely one for a direct false claim of acquiring "Emission Reduction Credits (ERC's)" by false reporting of vinyl chloride emissions, as follows:

> "At all material times herein, Georgia Gulf Corporation was entitled to and, on information and belief, did participate in the Emission Reduction Credit Banking program established and operated by the Louisiana Department of Environmental Quality. Further, on information and belief, Georgia Gulf obtained Emission Reduction Credits ("ERC's") based on its reports of emissions of vinyl chloride from the polyvinyl chloride unit."
>
> . . .
>
> "On information and belief, the submission of false and fraudulent records by Georgia Gulf of vinyl chloride emissions from the polyvinyl chloride unit allowed Georgia Gulf to obtain ERC's which are a thing of value and could be used by Georgia Gulf or transferred to another person or company in exchange for consideration."

On September 3, 2002, no further motions, pleadings or briefs having been filed after Bain's July 10, 2002 amended complaint, the district court denied defendant's April 22, 2002 motion to dismiss, stating that Bain had adequately alleged that Georgia Gulf's submission of false records and documents had "prevented the Government from collecting the penalties it would have received had the records and documents been accurate." The court held that,

---

> "Further, on information and belief, the submission of false and fraudulent records by Georgia Gulf of vinyl chloride emissions from the polyvinyl chloride unit prevented the Louisiana Department of Environmental Quality and the Environmental Protection Agency from imposing statutory fines and penalties which were owed by Georgia Gulf."

5

assuming the truth of the allegations, this conduct would fall within the reverse False Claims Act because "the making of false or fraudulent records prepared by the defendant would allow Georgia Gulf to 'avoid' an 'obligation to pay' what the Government would have received had Georgia Gulf submitted accurate records." The district court's order did not address Bain's direct false claim concerning Emission Reduction Credits which was added by his July amended complaint and was not addressed by Georgia Gulf's April motion to dismiss.

Georgia Gulf on September 17, 2002, filed a motion to reconsider, and in the alternative, a Rule 56 motion for summary judgment. On September 19, 2002, the district court denied Georgia Gulf's motion for reconsideration respecting its 12(b)(6) motion, and ordered the parties to conduct discovery. Plaintiff then filed an *ex parte* motion to clarify the ruling confirming that the district court had dismissed the summary judgment motion. The district court ruled that to the extent Georgia Gulf was filing a motion for summary judgment, it failed to comply with the Rule 56 procedures and therefore the motion was denied without prejudice.

On October 25, 2002, the district court stayed these proceedings pending a decision by this court in a similar case, *United States, ex rel. John Doe v. Dow Chemical Co.*, 343 F.3d 325 (5th Cir. 2003) (*Dow*), which had been decided by another district court, and which was "directly opposite the decision rendered by

6

this Court in this case on the same issue."  The district court certified the order for interlocutory appeal, and Georgia Gulf filed a petition for permission to appeal the district court's orders of September 3 and 19, 2002.  On January 7, 2003, this court granted leave to appeal from the interlocutory orders of the district court.

On August 14, 2003, this court decided *Dow* without reaching the issue of whether the complaint stated a claim under the FCA.[3]

**Discussion**

### 1.  *The Reverse False Claims Act*

Under the FCA, the government, or a party suing on its behalf, may recover for false claims made by the defendant to secure a payment by the government.  Under the reverse False Claims Act subsection, a plaintiff may recover against "any person who . . . knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(7) (2002).  In a reverse false claims suit, the defendant's action does not result in improper payment by the government to the defendant, but instead results in no payment to the government when a payment is obligated.

---

[3] In *Dow*, this court held that it was proper for the district court to dismiss Doe's complaint for failure to plead with particularity as required by Rule 9(b).  Therefore, this court determined that there was no need to address the district court's ruling on Dow's 12(b)(6) motion to dismiss directed at the § 3729(a)(7) claim sought to be alleged there.

7

## 2. Plaintiff's amended complaint did not state a claim under the Reverse False Claims Act.

Bain based his section 3729(a)(7) complaint on allegations that Georgia Gulf concealed from the government the fact that it had falsified emissions records in an effort to avoid a fine or monetary penalty to which the company might have been subjected if the government had known of the illegal emissions and had then decided to take action against Georgia Gulf. The district court held that Bain's complaint stated a cause of action under the reverse False Claims Act. We disagree.

Bain argues on appeal that Georgia Gulf's obligations under the reverse FCA are based on its environmental permits, specifically those which incorporate provisions of the Clean Air Act (CAA), 42 U.S.C. § 7401 *et seq*. The CAA requires the EPA to establish regulations for "air quality standards." Section 7410 requires each state to develop an implementation plan (SIP) that describes the manner in which the state will achieve the national minimum standards on air pollution. The LDEQ was established to ensure Louisiana's compliance with environmental regulations, including the air quality mandates. *See* La. R.S. 30:2011. LDEQ issues permits which impose limits on the quantities of air pollution that a source can emit. La. Admin. Code 33:III §507.

Under 42 U.S.C § 7413, the federal government is charged with enforcement of SIP's and air quality permits, which have the effect of federal law. The permits issued by the LDEQ are enforced by the

8

State of Louisiana.  Georgia Gulf claims that its LDEQ permit is "merely a grant of authority to discharge, not a contract setting forth obligations owed to and/or from the Government."  However, Bain makes the wholly conclusory argument on appeal that the permit is or should be considered a contract with the government, though that was not alleged or suggested in the complaint or amended complaint.

Bain argues that this court should interpret a potential fine or monetary penalty, such as those to which Georgia Gulf could be subject for causing emissions precluded by the CAA or the SIP and in circumstances or quantities not authorized by its permit, as an "obligation" to the government within the meaning of the statute. However, Georgia Gulf argues that such a potential fine or penalty cannot be the basis for a reverse false claims action.  The United States, as amicus, although taking a somewhat broader general view of section 3729(a)(7) than does Georgia Gulf, nevertheless asserts that a potential fine that may be imposed upon a person *simply for performing an act that the government has defined as unlawful or prohibited* is not an "obligation" within the meaning of section 3729(a)(7).  Therefore, the government argues, the avoidance of such a potential fine or civil penalty in the present situation does not give rise to reverse false claims liability.  We agree that, at least in these circumstances, there is no reverse false claims liability.

**A. Standard of Review**

Dismissals for failure to state a claim under FRCP 12(b)(6) are reviewed *de novo*. *Cousin v. Small*, 325 F.3d 627, 631 (5th Cir. 2003). A district court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *United States, ex rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899, 901 (5th Cir. 1997). "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003) (internal quotation marks and citation omitted).

**B. Discussion**

Bain alleges that Georgia Gulf submitted false emissions records in an attempt to avoid a fine or monetary penalty to which Georgia Gulf might have been subject if the government had known of the actual emissions and then decided to seek fines or civil penalties against the company. The district court agreed with this interpretation, holding that the relator's complaint stated a cause of action under section 3729(a)(7). The court held that, as Bain had asserted, the "'obligation to pay' . . . the Government" was satisfied by the performance of an unlawful act that may result in a fine or monetary penalty.

Neither the complaint nor the amended complaint alleges, and Bain does not contend, that at any time *at or after* the making of

10

the herein complained of false statements any fine or penalty, with respect to the emissions allegedly misrepresented by such statements, had ever been imposed on Georgia Gulf or that any proceeding seeking to impose, or to determine whether to impose, any such fine or penalty was ever pending or instituted.

Georgia Gulf argues that the FCA section at issue, section 3729(a)(7), should be read so that potential fines or penalties cannot form the basis of an FCA reverse claim.  In support of its argument, Georgia Gulf principally relies on *United States, ex rel. American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 190 F.3d 729, 736 (6th Cir. 1999) ("a reverse false claim action cannot proceed without proof that the defendant made a false record or statement at a time that the defendant owed to the government an obligation sufficiently certain to give rise to an action of debt at common law"); and *United States v. Q International Courier, Inc.*, 131 F.3d 770, 774 (8th Cir. 1997) (*Quick*) (holding that under the FCA an obligation "must be for a fixed sum that is immediately due").

Georgia Gulf contends that, following the reasoning of *American Textile* (*ATMI*), a defendant must have made or submitted a false record at the time that the defendant owed an obligation to the government sufficiently certain to give rise to an action of debt

11

at common law.[4]  *ATMI*, 190 F.3d at 736.  The Sixth Circuit in *ATMI* based its decision in part on *Quick*, but also referred to the difference between a "claim" and an "obligation."  The court stated, "'[c]laims' encompass requests for payment not only based on contracts, but also because of the many privileges and benefits doled out by the government.  When seen in context, the Act's use of 'obligation' suggests a more limited meaning . . . ."  190 F.3d at 736.  In *Quick*, the court held that in order to prevail, the government must show that there was an "existing, specific legal duty in the nature of a debt that Quick or the other defendants owed the United States at the time of their [violative] activities."[5]

---

[4] Although this court has not yet addressed the interpretation of section 3729(a)(7), a district court within this circuit recently issued an opinion that expressly followed the reasoning laid out by the Sixth and Eighth Circuits.  *U.S. ex rel. Graves v. ITT Educational Services*, 284 F.Supp.2d 487, 508–09 (S.D. Tex. 2003).  That court dismissed the relator's claim under section 3729(a)(7), holding that "a government contractor's potential liability for fines or sanctions that might be imposed at some indefinite point in the future, in some indefinite amount, is not an 'obligation to pay' under §  3729(a)(7).  Even if the government's sanctions for noncompliance could include the ability to sue for reimbursement of previously funded monies, that potential does not arise to an 'obligation to pay' that would support a reverse" FCA claim.  *Id*.

[5] In *Quick*, a mail courier was alleged to have engaged in an illegal international remailing scheme, by taking letters out of the U.S. to Barbados, and then mailing them back into the U.S., achieving significant postage cost savings.  In that case, the government did not allege a true contract with the defendants, but rather relied upon statutes and regulations to establish that the defendants owed a duty to pay full domestic postage.  The court held that the statues and regulations cited by the government could show that the defendants engaged in fraud, but they did not "create a legal duty for the defendants to pay

12

Georgia Gulf agrees with these readings of the statute, contending that a defendant must have made a false record at the time that the defendant owed an obligation to the government sufficiently certain to give rise to an action of debt at common law.

On the other hand, Bain argues that potential fines and penalties should be considered "obligations" for the purposes of section 3729(a)(7). To bolster his argument, Bain relies on the opinion in *United States v. Neifert-White Co.*, 88 S. Ct. 959 (1968), for the proposition that Congress desired the FCA to be given a broad reading and "intended [it] to reach all types of fraud, without qualification, that might result in financial loss to the Government."[6] Although that case was decided well before the 1986

domestic postage." 131 F.3d at 773.

In *Quick* the court relied in part on the portions of the legislative history to the 1986 amendments to FCA which (among other things) added the reverse false claims provision of § 3729(a)(7), PL 99-562 § 2, 100 Stat. 3153 (October 27, 1986), indicating that the false statement contemplated is one relating to money "owed" the government. *Quick*, 131 F.3d at 773. The Senate Report concerning PL 99-562 notes that the subcommittee added a provision "that an individual who makes a material misrepresentation to avoid paying money *owed* the Government should be equally liable under the Act as if he had submitted a false claim" (emphasis added) and in its "section-by-section analysis" states:

"Section 1, paragraph (7) of the bill amends section 3729 to provide that an individual who makes a material misrepresentation to avoid paying money *owed* the Government would be equally liable under the Act as if he had submitted a false claim to receive money."

S. Rep. No. 99-345 at 15, 18 (1986), reprinted in 1986 U.S.C.C.A.N. 5266 at 5280, 5283 (emphasis added).

[6] The Court in that case held that the FCA should apply to a false statement made in an application for a government loan,

legislation which, among other things, added the section 3279(a)(7) reverse False Claims Act provision, P.L. 99-562, § 2, 100 Stat. 3153 (October 27, 1986), the above passage from *Neifert-White* was quoted with approval in the legislative history of section 3179(a)(7).  See S. Rep. No. 99-345 at 19 (1986), reprinted in 1986 U.S.C.C.A.N. 5266 at 5284.  Following this reasoning, the district court held that in submitting false records and documents, Georgia Gulf prevented the government from collecting fines or penalties that it could have imposed and received if the records had been accurate, and therefore Bain stated a claim.

Bain also cites *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1237 (11th Cir. 1999), for the proposition that the existence of a need for further government action before an obligation is liquidated does not preclude a reverse false claims action.  In that case, the court found that a reverse false claim existed when the defendant had an existing agreement with the government, in the form of an actual contract, that created "a specific legal obligation at that time to dispose of any excess property in accordance with the government's instructions."  The Eleventh Circuit distinguished *Quick* because that case did not involve a government contract, and held that a potential obligation satisfied the requirements of section 3729(a)(7).  *See also United States ex rel. Sequoia Orange*

because the statute "reaches beyond 'claims' which might be legally enforced, to all fraudulent attempts to cause the Government to pay out sums of money."  *Id*. at 962.

14

*Co. v. Oxnard Lemon Co.*, 1992 WL 795477 (E.D.Cal. May 4, 1992) (violation of an administrative enforcement statute constituted an obligation);[7] *United States v. McGinnis, Inc.*, 1994 WL 799421 (S.D.Ohio Oct. 26, 1994) (defendant's failure to report and record pollution discharge as required by the Clean Water Act supported a reverse false claim; however, this case has been superseded by *ATMI*).

The United States, as amicus herein, takes the position that the statute does not require that there always be a specific fixed legal obligation at the time the alleged false record or statement was made. According to the government, there are essentially two ways an obligation within the meaning of section 3729(a)(7) could arise: "First, there may be a fixed obligation, spelled out by a judgment, contract, statute, or regulation, that imposes a duty on the person to pay money or transmit property to the government. This fixed obligation may be liquidated, as with a judgment, or it may be unliquidated but easily determinable, as with the tariffs or fees due on imported goods. Avoidance of a fixed obligation is indisputably a *sufficient* condition supporting a reverse false

---

[7] Although it was called into question by the Sixth Circuit in *ATMI* , this Ninth Circuit district court case supports Bain's contentions, holding that potential fines and forfeitures against which the defendant allegedly insulated itself through false reporting were covered by section 3729(a)(7), and that the assertion that an "obligation to pay" should only encompass money owed to the government under a contract for goods, services, concessions or other benefits was unduly restrictive and contrary to the intent of Congress.

claims action under section 3729(a)(7)." The government goes on to state that (contrary to Georgia Gulf's contention) such an existing "fixed obligation" is not *always* necessary to state a reverse claim, *provided* that the obligation avoided, though only contingent, is one which arises out of an economic or financial relationship, typically contractual, between the government and the defendant under which the government provides some benefit to the defendant wholly or partially *in exchange* for an expected payment or transfer of property by or on behalf of the defendant to (or for the economic benefit of) the government.[8] However, the government urges that an

_____

[8]In this connection the government notes the reference in the legislative history to a "potential" claim, citing the following language from page 18 of the Senate Report: "The question of whether the False Claims Act covers situations where, by means of false financial statements or accounting reports, a person attempts to defeat or reduce the amount of a claim or *potential* claim by the United States against him, has been the subject of differing judicial interpretations." S. Rep. No. 99–345 at 18, 1986 U.S.C.C.A.N. 5266 at 5283 (emphasis added). The Senate Report next goes on to note that fraudulently filing a false income tax return showing less taxes owing than are due had been held not a false claim, in contrast to filing a fraudulent claim for tax refund, which had been held to be a false claim. The Report indicates the intention *not* to make the former an actionable reverse false claim. *Id*. The Report next addresses "contract or lease arrangement cases" in which some courts had held that "a person's fraudulent attempt to reduce the amount payable by him to the United States was considered not to constitute a violation of the False Claims Act." It contrasted those cases to the "better reasoned result" in *Smith v. United States*, 287 F.2d 299 (5th Cir. 1961), where we held that a lessee from the government whose lease obligated it to "remit quarterly to . . . [the government] as rent the excess of the lessee's revenues from the project over its operation expenses," and to submit quarterly reports of its said revenues and expenses, violated the False Claims Act by submitting a report which falsely inflated expenses and thus falsely reduced the amount of

16

environmental permit such as that involved here does not give rise to such an economic type relationship and that "there is no free-floating obligation actionable under the False Claims Act that arises merely because a person must obey the law" or the terms of a regulatory permit, and that "the False Claims Act does not apply when the false statements at issue merely conceal the fact that the person making the statement engaged in criminal or otherwise unlawful conduct, and therefore might properly be subject to fines, penalties, or forfeitures," citing *Quick*, 131 F.3d at 774, and *ATMI*, 190 F.3d at 739-40.

It is unclear to us precisely what in *other* contexts the operational differences would be between the government's position and that of the Sixth and Eighth Circuits in *ATMI* and *Quick*. We note that section 3729(a)(7) applies not only to the defendant who "makes" a false statement or record but also to one who knowingly "uses" (or causes to be used) such a statement or record for the prohibited purpose. Thus, if the defendant, for the prohibited purpose, knowingly uses (or causes to be used) a false statement to reduce the amount of a *then* matured and owing fixed obligation "to

---

rent paid (and showed as owing). The context indicates that the reverse false claims provision was intended by the Committee to make sure that the *Smith* result, rather than the contrary result in the other "contract or lease arrangement cases," would be applied in the False Claims Act. *See* 1986 U.S.C.C.A.N. 5266 at 5284 (Committee "included this amendment to resolve the current split in the case law relating to such material misrepresentations.").

pay or transmit money or property to the Government," it would not seem to matter that *when* the statement was *made* the obligation was merely contingent and unfixed. If this is so, much of the government's concern about some of the expressions in *ATMI* and *Quick* might be alleviated. For purposes of deciding this case, however, we need not, and do not, choose between the approach of the government and that of *ATMI* and *Quick*, much of which the government agrees with.

It is clear to us that, as the government argues, the reverse false claims act does *not* extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed (and as to which no formal proceedings to do so have been instituted) and which do not arise out of an economic relationship between the government and the defendant (such as a lease or a contract or the like) under which the government provides some benefit to the defendant wholly or partially *in exchange* for an agreed or expected payment or transfer of property by (or on behalf of) the defendant to (or for the economic benefit of) the government. Nothing in the complaint or amended complaint even suggests that Georgia Gulf had any sort of contractual or other economic relationship with the government, or indeed any relationship at all other than having a permit authorizing certain PVC emissions. Any such relationship was obviously purely regulatory, and not one in which any economic or financial transfer

18

or payment by Georgia Gulf to the government was contemplated. The permit obviously contemplated that Georgia Gulf would not make otherwise precluded PVC emissions in amounts or circumstances other than as authorized by the permit, not that Georgia Gulf would pay the government for PVC emissions. Georgia Gulf, in common with all others, was obligated to obey the law, including the Clean Air Act and the regulations pursuant thereto, and if it did not it could be subjected (as alleged in the amended complaint) to "statutory fines and penalties," but the mere contingent potential that such fines or penalties might be (but had not been) sought and imposed does not constitute "an obligation to pay or transmit money or property to the Government" within the meaning of section 3729(a)(7). Nor does anything in the legislative history, which speaks of money "owed" the government and addresses obligations arising under "contract or lease arrangement[s]," suggest a broader reading of "obligation." See notes 5 and 8 *supra*.

Accordingly, we hold that the district court erred in its ruling that the complaint, as amended, stated a claim under section 3729(a)(7).

### 3. *Emission Reduction Credits (ERCs)*

In his amended complaint, Bain for the first time added allegations to the effect that the submission of false or fraudulent records allowed Georgia Gulf to obtain ERCs, which allegedly are a thing of value and could be transferred for consideration. Georgia

19

Gulf counters that Bain's ERC claim must fail because he did not sufficiently allege that Georgia Gulf made any false claims to obtain payment from the government.[9]

After Bain filed his amended complaint, Georgia Gulf did *not* file another motion to dismiss, and the district court did not address the ERC allegations in its ruling. Rather, the district court held that Bain did state a claim under the *reverse* FCA, and denied the motion to dismiss. Georgia Gulf then filed a motion to reconsider the denial of the motion to dismiss and filed a motion for summary judgment. In its motion for reconsideration, Georgia Gulf raised the other district court holding concerning section 3729(a)(7) in *Dow*, and based on that case, the district court in the case *sub judice* certified its ruling.

This case was certified for interlocutory appeal on the district court's initial order denying the 12(b)(6) motion, which was filed after the amended complaint, but addressed only Georgia Gulf's motion that was filed before the amended complaint existed. Therefore, we hold that the question of whether Georgia Gulf violated the FCA by submitting false records and thereby obtaining ERCs is not encompassed within the certified orders, and in any event, would better be addressed in the first instance by the

---

[9] This ERC claim would not fall under § 3729(a)(7) as a reverse false claim, and rather must be examined, under subsections (a)(1) or (2).

district court.[10]

## Conclusion

For the foregoing reasons, the district court's denial of Georgia Gulf's 12(b)(6) motion directed to the section 3729(a)(7) claim is REVERSED and the case is REMANDED to the district court for proceedings consistent with this opinion.

REVERSED and REMANDED.

---

[10]We also note that it is questionable whether Bain has complied with 31 U.S.C. § 3730(b)(2) & (4) with respect to the alleged § 3729(a)(1) and/or (2) false claim concerning ERCs, a matter alleged for the first time in Bain's amended complaint, which was filed well after the government's November 8, 2001 notice of election to decline intervention. There is no indication that the government was ever served with "written disclosure of all material evidence and information" Bain possessed in respect to that claim.

With respect to Georgia Gulf's motion for summary judgment, it was denied "without prejudice" on the ground that Georgia Gulf "failed to comply with the procedures set forth in Rule 56." It is not properly before us.