# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 5, 2008

Charles R. Fulbruge III
Clerk

No. 06-31238

United States of America, ex rel, ROBERT DANIEL MARCY,
on behalf of the United States of America, c/o James Letten & John Ashcroft

Plaintiff - Appellant

v.

ROWAN COMPANIES INC; NEWFIELD EXPLORATION GULF COAST,
INC, formerly known as EEX Corporation; NEWFIELD EXPLORATION CO;
REMINGTON OIL & GAS CORP

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before BARKSDALE, DENNIS, and SOUTHWICK, Circuit Judges.

SOUTHWICK, Circuit Judge:

Robert Daniel Marcy challenges the district court's dismissal of the qui tam action that he brought on behalf of the United States under the False Claims Act. We affirm the judgment of dismissal.

## FACTS

On December 2, 2003, Robert Marcy filed suit against Newfield Exploration Gulf Coast, Inc., Newfield Exploration Company, Rowan Companies, Inc., and Remington Oil and Gas Corporation ("Defendants"). Marcy alleges that, while

employed on Defendants' Midland offshore drilling unit, he was ordered by Defendants to illegally dump oil, oil waste, solid waste, grease, paint, and other hazardous substances into the Gulf of Mexico at night. Marcy contends that Defendants' actions violated the Federal Water Pollution Control Act ("FWPCA") and the Act to Prevent Pollution from Ships ("APPS"), that Defendants intentionally failed to report the discharge of oil or hazardous substances as required by those two enactments, and that Defendants intentionally omitted a record of the discharges both from the "Oil Record Book" (in violation of 33 C.F.R. § 151.25) as well as from the weekly-filed Mineral Management Service activity reports, hereinafter referred to using their form number as the "MMS 133 reports" (in violation of Department of Interior regulations).

Marcy maintains that Defendants fraudulently avoided civil fines and other penalties under several statutes, including the FWPCA and the APPS, the Oil Pollution Act of 1990 ("OPA"), and the Outer Continental Shelf Lands Act ("OCSLA"). Marcy also alleges that these actions occurred in violation of the terms of the oil and gas lease granted to Defendants by the United States pursuant to OCSLA, which requires that Defendants operate in compliance with OCSLA, all other applicable statutes, and "regulations or orders intended to protect persons, property, and the environment on the Outer Continental Shelf." Finally, Marcy alleges that because Defendants breached the lease but continued operations, they fraudulently retained oil and gas, oil and gas royalties, and profits owed to the United States.

Marcy contends that the Defendants' conduct constitutes a violation of the False Claims Act. Marcy refers us to these subsections of the Act:

> Any person who . . . (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government . . . or (7) knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government . . . is liable to the

> United States Government for a civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. §§ 3729(a)(2) and (a)(7). After investigating Marcy's allegations, the United States filed notice of its election to decline intervention.

Each Defendant filed a motion to dismiss, arguing that Marcy failed to state a claim under the False Claims Act and that he did not allege fraud with sufficient particularity under Federal Rule of Civil Procedure 9(b). The district court granted the motions to dismiss, concluding that Marcy failed to state a claim under the Act. The court declined to address the arguments regarding the particularity of the pleading. After motions for reconsideration and to amend the complaint were denied, Marcy appealed.

## DISCUSSION

Marcy asserts that his complaint adequately pled his cause of action. Our review of this issue is de novo, accepting as true the factual allegations that are well-pled and construing them favorably towards the plaintiff. United States ex rel. Willard v. Humana Health Plan of Texas, 336 F.3d 375, 379 (5th Cir. 2003). Those factual allegations must support a claim to relief that is plausible on its face and rises above mere speculation. In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007).

Because the two sections of the False Claims Act that Marcy employs have different requirements, we examine each separately.

A. Section 3729(a)(2) – knowingly make false claim for payment.

The False Claims Act is the government's primary litigation tool for recovering losses sustained as the result of fraud. Avco Corp. v. United States Dep't. of Justice, 884 F.2d 621, 622 (D.C. Cir. 1989). Under Section 3729(a)(2), the Act creates liability for "[a]ny person who . . . knowingly makes, uses, or

causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government."

A threshold issue is whether any "claim" was made for purposes of Section 3729(a)(2). The Defendants, engaged in the physical extraction of natural resources belonging to the United States, did not request or demand money or property from the United States. They were taking property through their drilling operations as permitted by contract, i.e., their leases. Defendants contend that because the allegedly inaccurate Oil Record Logs and MMS 133 reports do not certify compliance with the lease, these documents could not serve as false certifications under the Act.

In response, Marcy argues that even though this is not a typical False Claims Act violation, the Act nonetheless applies. Marcy's theory is that the mineral lease was a contract in which the lessee received permission to take government property subject to the lease terms. The purpose of the weekly-submitted MMS 133 reports and the Oil Log Book was allegedly in part to assure the government of a lessee's compliance with lease terms. Marcy contends that dumping of oil and trash necessarily violates the lease and must be documented in both of these records. Because it was not, Marcy argues that Defendants falsely and impliedly certified that they were in compliance with the lease.[1] The benefit Defendants received from this false certification was maintaining the right to take the property of the United States as provided by the lease.

We do not decide whether Marcy has properly identified a claim for purposes of Section 3729(a)(2). Resolving that issue would necessarily require us to determine whether implied certifications may be claims under the Act. This Court has previously deferred that question, and we do so again today. See Willard, 336 F.3d at 381-82; United States ex rel. Stebner v. Stewart &

---

[1] Marcy also argues that the Defendants impliedly certify their compliance with the lease every time they act to take the government's oil and gas under its authority.

Stephenson Servs., Inc., 144 F.App'x 389, 394 (5th Cir. 2005) (unpublished). Instead, we resolve this appeal based on the requirement of materiality for any claim made. A material claim is one that is required to be made in order to receive the relevant government benefit. United States v. Southland Management Corp., 326 F.3d 669, 679 (5th Cir. 2003) (en banc) (Jones, J. concurring).

In a recent and similar precedent, the plaintiff filed a qui tam action against Humana Health Plan for selectively choosing participants for Humana's HMO both in violation of Humana's contract with federal agencies to provide health care services to Medicare beneficiaries as well as in violation of other federal regulations. Willard, 336 F.3d at 379. This Court dismissed the claim, noting that the plaintiff had failed to "allege facts that would show that [the government] conditioned its payment to Humana on any implied certification of compliance . . . ." Id. at 382.

We have also concluded that when "the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation." United States ex rel. Thompson v. Columbia/HCA Healthcare Corp., 125 F.3d 899, 902 (5th Cir. 1997). These "false certifications of compliance create liability under the FCA when certification is a prerequisite to obtaining a government benefit." Id.

Marcy contends that the Willard materiality standard does not govern, arguing instead that we should apply the standard articulated by a panel of this Court in United States v. Southland Management Corp., 288 F.3d 665 (5th Cir.), reh'g en banc granted, 307 F.3d 352 (5th Cir. 2002). The initial 2002 Southland opinion determined that a violation of the Act occurred if the false certifications had a "natural tendency to influence or were capable of influencing" the decision

of the governmental entity. Southland, 288 F.3d at 676. However, the Southland panel opinion upon which Marcy relies was automatically vacated when it was reheard en banc. See 5th Cir. R. 41.3; Southland, 326 F.3d at 678 n.2 (Jones, J. concurring) (grant of en banc rehearing vacated panel decision). Accordingly, the 2002 Southland panel opinion is not precedent. Marcy did not find anything worth mentioning for today's issues in the en banc, final opinion in the case. Southland, 326 F.3d 669.

In essence, Marcy alleges that Defendants fraudulently maintained their right to take government property under the lease by failing to report their violations of certain laws and regulations. However, the lease between Defendants and the United States provides that if "Lessee fails to comply with any of . . . the terms of this lease, the lease shall be subject to cancellation." That language means that cancellation is only an option; nothing in the lease requires cancellation or otherwise denies benefits to the Defendants in the event of a false certification. Indeed, the same section of the lease provides that the government may exercise "other remedies" available against Defendants. Cf. Willard, 336 F.3d at 382-83 (noting the government's alternative options).

Because the environmental requirements that Marcy references were not prerequisites to continuation of the lease, Marcy fails to state a claim under Section 3729(a)(2).

B. Section 3729(a)(7) – knowingly conceal obligation to pay.

In a reverse False Claims Act suit, there is no improper payment by the government to a defendant, but rather there is an improper reduction in the defendant's liability to the government. This provision of the Act entitles a plaintiff to recover against a defendant who "knowingly makes, uses, or causes to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(7).

The nature of Defendants' "obligation to pay" and whether it is sufficient to trigger liability under the Act are the central concerns here. Marcy contends that through the fraudulent certification, Defendants avoided fines and other penalties that would have been imposed under the Clean Water Act (CWA) and other applicable environmental laws had the government known of Defendants' environmental violations.[2] Defendants' potential liability, Marcy claims, is an "obligation to pay" under 31 U.S.C. § 3729(a)(7) that Defendants avoided by their false certifications.

Some courts have held that in order to create liability under (a)(7), the obligation must be fixed and definite at the time of the false claim. American Textile Mfrs. Inst., Inc. v. The Limited, Inc., 190 F.3d 729, 735 (6th Cir. 1999) ("ATMI") ("To recover under the False Claims Act . . . the United States must demonstrate that it was owed a specific, legal obligation at the time that the alleged false record or statement was made, used, or caused to be made or used" and "[t]he obligation cannot be merely a potential liability."); United States v. Q Int'l Courier, Inc., 131 F.3d 770, 774 (8th Cir. 1997) (False Claims Act requires a "fixed sum that is immediately due"; a potential penalty is insufficient). Under that understanding of the Act, reverse false claims did not occur when the Defendants failed to report environmental violations.

This Court has taken a somewhat different approach. In the key precedent, a plaintiff (Bain) brought a reverse False Claims Act claim against his employer Georgia Gulf, claiming that Gulf had violated certain environmental laws and submitted false records to the EPA to hide those

---

[2] Another Marcy argument is this: 1) a provision of OCSLA allows the Secretary of the Interior to reduce or eliminate any royalty owed to the United States by Defendants, and 2) application of that provision is conditioned upon Defendants' continued compliance with the lease, which includes all applicable environmental regulations. Marcy contends that Defendants' statutory violations caused them to incur an obligation to transfer oil and gas and/or their royalties back to the United States. The Section 3729(a)(7) analysis that follows applies to this allegation as well.

violations. United States ex rel. Bain v. Georgia Gulf Corp., 386 F.3d 648 (5th Cir. 2004). Unlike here, however, that defendant corporation was not operating under a contract with the government. Id. at 657. Like Marcy, Bain argued that the possibility of future environmental liability was the "obligation to pay" that the employer avoided by the submission of false records to the EPA. Georgia Gulf argued that an obligation had to be fixed and determined to state a claim under (a)(7).

The federal government, participating as amicus, proposed an intermediate position. It suggested that a fixed and definite obligation was not always necessary for (a)(7) liability. But, the government emphasized, a potential obligation has to arise out of the contractual or other close relationship between a defendant and the federal government. Id. at 657-58.

The Bain court determined that it did not need to decide, in the detail urged by the parties, the reach of an (a)(7) claim. Instead, Bain held this:

> [T]he reverse false claims act does not extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed (and as to which no formal proceedings to do so have been instituted) and which do not arise out of an economic relationship between the government and the defendant (such as a lease or a contract or the like) under which the government provides some benefit to the defendant wholly or partially in exchange for an agreed or expected payment or transfer of property by (or on behalf of) the defendant to (or for the economic benefit of) the government.

Id. at 657 (emphasis omitted). The Bain court noted that the alleged government fines for pollution were wholly speculative. The court then explained that the claim failed because such fines would arise from the general environmental laws, not any particular contractual relationship between the government and the defendant:

> Georgia Gulf, in common with all others, was obligated to obey the law, including the Clean Air Act and the regulations pursuant

thereto, and if it did not it could be subjected (as alleged in the amended complaint) to "statutory fines and penalties", but the mere contingent potential that such fines or penalties might be (but had not been) sought and imposed does not constitute "an obligation to pay or transmit money or property to the Government" within the meaning of section 3729(a)(7).

Id. at 658.

Bain controls our result. First, the obligation to pay asserted by Marcy was potential and contingent for precisely the same reasons that existed in Bain. Marcy argues that an (a)(7) reverse false claim occurred when Defendants allegedly failed to comply with a requirement under the Federal Water Pollution Control Act to report immediately upon becoming aware of a relevant polluting discharge. 33 U.S.C. § 1321(b)(5). However, even when a statute requires immediate action from a violator, the government still must choose whether to impose a penalty. Other courts have held that when potential fines depend on intervening discretionary governmental acts, they are not sufficient to create "obligations to pay" under the False Claims Act. United States ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prods., Inc., 370 F. Supp. 2d 993, 1000 (N.D. Cal. 2005) ("potential obligations—fines, penalties and the like—that are contingent upon the exercise of some discretion or intervening act by the government are not properly the subject of a suit under [§ 3729(a)(7)]"); United States ex rel. Graves v. ITT Educ. Servs., Inc., 284 F. Supp. 2d 487, 508 (S.D. Tex. 2003) ("a government contractor's potential liability for fines or sanctions that might be imposed at some indefinite point in the future, in some indefinite amount, is not an 'obligation to pay' under section 3729(a)(7).").

Moreover, the potential liabilities that Marcy claims are the relevant payment obligations did not arise out of the lease with the government. All polluters face the prospect of liability for violations of environmental laws, regardless of whether they contract with the federal government or not. If such

9

violations were enough to create a reverse False Claims Act claim, it would broaden the scope of the Act far beyond present interpretations. ATMI, 190 F.3d at 739 ("If the reverse false claims provision encompasses the defendant's actions, it has incredible scope, permitting suits against any person who makes a false statement to the federal government that he did not commit a statutory or regulatory violation that might have led to the imposition of a fine, payment of liquidated damages, imposition of a tax, or forfeiture of property.").

Marcy's allegation that Defendants submitted the false certification to avoid potential environmental liability is legally insufficient to make a reverse false claim under Section 3729(a)(7).

C. Motion to Amend

Federal Rule of Civil Procedure 15(a) provides that leave to amend shall be freely given "when justice so requires." A district court has the discretion to consider numerous factors in evaluating whether to allow amendment, including the futility of amending, the party's repeated failure to cure deficiencies by previous amendments, undue delay, or bad faith. Foman v. Davis, 371 U.S. 178, 182 (1962). We review the denial of a motion to amend for abuse of discretion. Cambridge Toxicology Group, Inc. v. Exnicios, 495 F.3d 169, 177 (5th Cir. 2007).

After the district court dismissed his claims, Marcy filed a motion to amend in order to add to the complaint the fact that the United States Department of Justice would seek indictments against at least one of the Defendants after investigating Marcy's illegal dumping allegations. Marcy also alleged that Defendant Rowan had agreed to enter into a felony plea agreement, and that Marcy had been asked to testify before a grand jury in the future.[3]

---

[3] Marcy also claims in his brief on appeal that he could have alleged that the government would have necessarily cancelled its lease with Defendants had it known of their violations. Among other reasons, we reject that basis because Marcy did not raise this claim before the District Court, and cannot raise it for the first time on appeal.

The relevant time for evaluating the nature of Defendants' obligation to pay is when they made or used the false statements.  Bain, 386 F.3d at 657 (the statement must "reduce the amount of a then matured and owing fixed obligation"); ATMI, 190 F.3d at 736 (government must have been "owed a specific, legal obligation at the time that the alleged false record or statement was made, used, or caused to be made or used").  The government's pursuit of charges against individual Defendants occurred well after the false certifications alleged by Marcy in the complaint.  Accordingly, the facts Marcy wished to add would not have assisted him in stating a reverse False Claims Act claim.  Because Marcy had no right to make a futile amendment, the district court did not abuse its discretion in denying Marcy's motion.

Similarly, on appeal Marcy filed a motion for this Court to take judicial notice of convictions for environmental violations arising from these facts.  Because those convictions did not create specific financial and other legal obligations until long after the time relevant here, we deny the motion.

For the foregoing reasons, the judgment of the district court is AFFIRMED.