**REVISED December 14, 2016**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 16-30141

United States Court of Appeals
Fifth Circuit

**FILED**

December 13, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA, ex rel. JEFFREY M. SIMONEAUX,

Plaintiff–Appellee,

versus

E.I. DUPONT DE NEMOURS & COMPANY,

Defendant–Appellant.

Appeal from the United States District Court
for the Middle District of Louisiana

Before STEWART, Chief Judge, and SMITH and DENNIS, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Jeffrey Simoneaux brought a *qui tam* action against his former employer, E.I. duPont de Nemours & Company ("duPont"), under the False Claims Act ("FCA"). He contended that duPont had violated the reverse-false-claims provision, 31 U.S.C. § 3729(a)(1)(G), by concealing an obligation to pay

the United States a penalty arising from alleged violations of the Toxic Substances Control Act ("TSCA"). He also averred that duPont had retaliated against him in violation of the FCA, 31 U.S.C. § 3730(h). DuPont unsuccessfully moved for summary judgment on both claims, and we permitted this interlocutory appeal. Because duPont had no "obligation" to pay the United States, we reverse and remand the denial of summary judgment on the reverse false claim. With respect to the retaliation claim, we dismiss the appeal for want of appellate jurisdiction.

## I.

In his *qui tam* suit,[1] Simoneaux alleged that duPont violated the FCA's reverse-false-claims provision by failing to report leaks of sulfur dioxide and sulfur trioxide to the Environmental Protection Agency ("EPA") as required by Section 8(e) of the TSCA. The reverse-false-claims provision imposes liability on, *inter alia*, any person who "knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Simoneaux claimed that by failing to report under Section 8(e), duPont owed the United States a penalty and had avoided that obligation by failing to report the leaks. Simoneaux additionally proffered that duPont had wrongfully retaliated against him in violation of Section 3730(h).[2]

---

[1] The FCA may be enforced by either (1) a suit brought directly by the United States or (2) a *qui tam* action brought by a private person (called a "relator") in the name of the United States. 31 U.S.C. § 3730(a)–(b); *see also Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 463 n.2 (2007) ("*Qui tam* is short for '*qui tam pro domino rege quam pro se ipso in hac parte sequitur*,' which means 'who pursues this action on our Lord the King's behalf as well as his own.'").

[2] The complaint was filed under seal to give the United States an opportunity to decide whether to intervene as allowed by 31 U.S.C. § 3730(b). It declined to do so but participates on appeal as *amicus curiae* in support of duPont's position.

DuPont moved for summary judgment, asserting that even if it had violated Section 8(e), it had no "obligation" to pay the United States because the EPA had not assessed a penalty.[3] DuPont principally relied on *United States ex rel. Bain v. Georgia Gulf Corp.*, 386 F.3d 648 (5th Cir. 2004), and *United States ex rel. Marcy v. Rowan Cos.*, 520 F.3d 384 (5th Cir. 2008), which held that "the reverse false claims act does *not* extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed (and as to which no formal proceedings to do so have been instituted) . . . ." *Marcy*, 520 F.3d at 391 (quoting *Bain*, 386 F.3d at 657). With respect to the retaliation claim, duPont contended that Simoneaux had failed to establish that he had engaged in any protected activity.

The district court denied summary judgment, concluding that the Fraud Enforcement and Recovery Act of 2009 ("FERA"), which amended the FCA, had abrogated the relevant holdings of *Bain* and *Marcy*. The court held that under the FCA, as amended, a person can be liable for a reverse false claim based on a violation of a statute that imposes monetary penalties. The district court denied duPont's request that it certify the order for interlocutory appeal.

The jury returned a verdict in favor of duPont on the reverse false claim and retaliation claim. Simoneaux moved for a new trial, based on allegations that duPont had failed to provide certain leak-calculation documents in discovery. The court ordered a new trial under Federal Rule of Civil Procedure 60(b)(3). DuPont again asked the court to certify its denial of summary judgment for interlocutory appeal, noting that since the court's refusal to certify, a different district court in Louisiana had relied on *Marcy*, and we had affirmed.[4]

---

[3] It is undisputed that the EPA has not assessed a penalty on duPont or initiated any proceeding to do so.

[4] *See United States ex rel. Guth v. Roedel Parsons Koch Blache Balhoff & McCollister*,

The district court certified an interlocutory appeal under 28 U.S.C. § 1292(b), and we granted duPont leave to appeal.

## II.

This court reviews certified orders *de novo*. *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 397 (5th Cir. 2010) (en banc). Under Section § 1292(b), "a grant or denial of summary judgment is reviewed de novo, applying the same standard as the district court but review only extends to controlling questions of law." *Id.* (citation omitted). Our inquiry "is limited to the summary judgment record before the trial court." *Id.* (quoting *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 871 (5th Cir. 2009)).

## III.

The reverse-false-claim issue involves the interplay between the FCA and the TSCA. On the one hand, a person is liable under the reverse-FCA provision if he knowingly and improperly avoids an obligation to pay the United States. 31 U.S.C. § 3729(a)(1)(G). On the other hand, Section 8(e) of the TSCA requires chemical manufacturers to notify the EPA when they have "information which reasonably supports the conclusion that [a] substance or mixture presents a substantial risk of injury to health or the environment." 15 U.S.C. § 2607(e). The EPA can assess civil penalties for violations of Section 8(e). *Id.* §§ 2614–15. Simoneaux's theory is that a violation gives rise to reverse-FCA liability because the unpaid civil penalty is an "obligation" to pay the United States.

In *Bain* and *Marcy*, we held that potential or contingent penalties are not obligations under the FCA. *Bain*, 386 F.3d at 657; *Marcy*, 520 F.3d at 391.

---

No. 13-6000, 2014 WL 7274913, at *7 (E.D. La. Dec. 18, 2014), *aff'd*, 626 F. App'x 528 (5th Cir. 2015) (per curiam).

Simoneaux offers two arguments for why *Bain* and *Marcy* do not control. First, he asserts that FERA's definition of "obligation" covers contingent penalties and thus abrogates *Bain* and *Marcy*'s holding. Second, he theorizes that Section 8(e) imposes liability "at the statutory level" such that assessment of a penalty is mandatory.

Both of these notions fail. Although FERA's new definition resolved uncertainty regarding whether the *amount* of an obligation needs to be fixed, it did not upset the widely accepted holding that contingent penalties are not obligations. And a plain reading of the TSCA shows that penalties are not mandatory. Thus, we reverse the denial of summary judgment on the reverse-FCA claim because, even if duPont violated Section 8(e), it had no obligation under the reverse-FCA provision.

## A.

It was in *Bain* that we first addressed the interaction between the FCA and regulatory penalties. The *qui tam* relator urged that a potential penalty under the Clean Air Act constituted an "obligation" under the reverse-FCA provision. At the time, the FCA did not define "obligation." We held that

> the reverse false claims act does *not* extend to the potential or contingent obligations to pay the government fines or penalties which have not been levied or assessed (and as to which no formal proceedings to do so have been instituted) and which do not arise out of an economic relationship between the government and the defendant (such as a lease or a contract or the like) under which the government provides some benefit to the defendant wholly or partially *in exchange* for an agreed or expected payment or transfer of property by (or on behalf of) the defendant to (or for the economic benefit of) the government.

*Bain*, 386 F.3d at 657. Because the EPA had not assessed a penalty, and the defendant had only a "purely regulatory" relationship with the government, the relator failed to state a reverse-FCA claim. *Id.* at 657–58.

In *Marcy*, a relator advanced a similar theory based on alleged violations of the Clean Water Act ("CWA"). We declared that "*Bain* contro[lled] [the] result." *Marcy*, 520 F.3d at 391. We acknowledged that under the CWA, a polluter is required immediately to report certain polluting discharges. *Id.* "However," we explained, "even when a statute requires immediate action from a violator, the government still must choose whether to impose a penalty." *Id.* Although the defendant had a contractual relationship with the government, "the relevant payment obligations did not arise out of the [contract]," so the relator had failed to state a reverse FCA claim. *Id.* at 391–92.

B.

FERA amended the FCA to define "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment."[5] Simoneaux maintains that the definition is unambiguous and that unassessed regulatory penalties are included within its plain meaning. The district court agreed, emphasizing the phrase "whether or not fixed." On the other hand, duPont asserts that "established" is the key word.

The United States, as *amicus curiae*, agrees with duPont. It also notes that Congress did not change the overarching requirement that an obligation must be one "to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). "A statute enforceable through an unassessed monetary penalty," the United States explains, "creates an obligation to obey the law, not an obligation to pay money."

---

[5] Fraud Enforcement and Recovery Act of 2009, Pub. L. 111-21 § 4(a)(2), 123 Stat. 1617, 1623 (2009) (codified at 31 U.S.C. § 3729(b)(3)).

We agree with duPont and the United States. The most reasonable interpretation is that "established" refers to whether there is *any* duty to pay, while "fixed" refers to the *amount* of the duty.

Section 3729(b)(3) identifies three characteristics of "obligation[s]": (1) they must be "established dut[ies]"; (2) they need not be "fixed"; and (3) they can arise from a list of sources, including statutes and regulations. Both sides and the United States concur that Congress, by providing a definition of "obligation," was responding to the judge-made definitions that various courts had devised. We agree. The section of FERA that provides the new definition is titled "Clarifications to the False Claims Act to Reflect the Original Intent of the Law."[6] Moreover, a Senate Judiciary Committee Report, which both parties cite extensively, states that "this legislation addresses current confusion among courts that have developed conflicting definitions of the term 'obligation.'"[7] Thus, given the ambiguity of the terms, it is useful to look to the state of the law before enactment of FERA.

The key difference between the competing definitions of "obligation" was whether a duty to pay had to be fixed. The Eighth Circuit, in *United States v. Q Int'l Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997), provided the first interpretation of "obligation" and held that "[t]he duty . . . must [be] an obligation in the nature of those that gave rise to actions of debt at common law for money or things owed." Therefore, an obligation "must be for a fixed sum that is immediately due." *Id.* at 774. The Sixth Circuit adopted the same definition. *Am. Textile Mfrs. Inst., Inc. v. Ltd., Inc.*, 190 F.3d 729, 736 (6th Cir. 1999).

Other circuits, however, held that an obligation need not be for a fixed

---

[6] *Id.* § 4, 123 Stat. at 1617.

[7] S. REP. NO. 111-10, at 14 (2009), *as reprinted in* 2009 U.S.C.C.A.N. 430, 441.

sum.[8] As the Tenth Circuit explained, "we think that it is significant that [the reverse-FCA provision] refers to 'an obligation' and not 'a fixed obligation.' We agree that there are instances in which a party is required to pay money to the government, but, at the time the obligation arises, the sum has not been precisely determined." *Bahrani*, 465 F.3d at 1201. *This* is the issue—whether an obligation must be for a fixed sum—that caused the "confusion among courts" to which the Senate Report refers.[9]

In contrast, the overwhelming weight of authority, before FERA, held that contingent penalties are *not* obligations under the FCA.[10] Given that we presume that Congress is "aware of judicial interpretations of the law, and . . . act[s] with awareness of judicial interpretations of prior law,"[11] it necessarily follows that "whether or not fixed" resolved the active dispute over whether an obligation could be for an uncertain sum, while "established" confirmed the accepted holding that contingent penalties are not obligations under the FCA.

---

[8] *United States v. Bourseau*, 531 F.3d 1159, 1169–70 (9th Cir. 2008); *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1201–02 (10th Cir. 2006); *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1237–38 (11th Cir. 1999) (en banc).

[9] S. REP. NO. 111-10, at 14.

[10] *E.g.*, *Bourseau*, 531 F.3d at 1169–70; *Bahrani*, 465 F.3d at 1195; *Hoyte v. Am. Nat'l Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008); *Bain*, 386 F.3d at 657; *Am. Textile Mfrs.*, 190 F.3d at 738; *Q Int'l Courier*, 131 F.3d at 773; *United States ex rel. Conner v. Salina Reg'l Health Ctr., Inc.*, 459 F. Supp. 2d 1081, 1091 (D. Kan. 2006); *Zelenka v. NFI Indus.*, 436 F. Supp. 2d 701, 705–06 (D.N.J. 2006); *United States ex rel. Huangyan Imp. & Exp. Corp. v. Nature's Farm Prods., Inc.*, 370 F. Supp. 2d 993, 1000 (N.D. Cal. 2005). *But see Pickens v. Kanawha River Towing*, 916 F. Supp. 702, 708–09 (S.D. Ohio 1996); *United States ex rel. Sequoia Orange Co. v. Oxnard Lemon Co.*, No. CV-F-91-194, 1992 WL 795477, at *9 (E.D. Cal. May 4, 1992). We note that *American Textile* disapproves of *Pickens*, a decision from a district court within the Sixth Circuit. *See Am. Textile Mfrs.*, 190 F.3d at 735.

[11] *Howell v. Town of Ball*, 827 F.3d 515, 530 (5th Cir. 2016) (quoting *Dresser Indus. v. United States*, 238 F.3d 603, 614 n.9 (5th Cir. 2001)).

This view comports with the legislative history of FERA.[12] An early version of the bill defined "obligation" as "a fixed duty, or a contingent duty arising from an express or implied contractual, quasi-contractual, grantor-grantee, licensor-licensee, statutory, fee-based, or similar relationship, and the retention of any overpayment."[13] By a vote of ninety-four to one, the Senate adopted Senator Kyl's amendment to change the language to the current, enacted version.[14] The fact that Congress deleted the word "contingent," added the "whether or not" modifier to "fixed," and inserted the word "established" suggests that it did not intend to cover contingent penalties.

Although the statements of individual legislators are not controlling,[15] our interpretation is consistent with Senator Kyl's explanation of the amendment. As he stated, the original language was problematic because it spoke of "contingent" obligations and "[s]uch contingent or potential duties could include duties to pay penalties or fines, which could arise—and at least become 'contingent' obligations—as soon as the conduct that is the basis for the fine has occurred."[16] "Obviously," he continued, "we don't want the Government or anyone else suing under the False Claims Act to treble and enforce a fine before the duty to pay that fine has been formally established." *Id.*

Caselaw since FERA supports this interpretation. Simoneaux correctly

---

[12] This court repeatedly cautions against use of legislative history unless the text of a statute is ambiguous, which this text is not. *E.g.*, *Carrieri v. Jobs.com Inc.*, 393 F.3d 508, 518–19 (5th Cir. 2004). Nonetheless, we may cite the legislative history to give additional confirmation to the conclusion we have already reached by consulting the plain text.

[13] Fraud Enforcement and Recovery Act of 2009, S. 386, 155th Cong. § 4(a) (as reported by S. Comm. on the Judiciary, Apr. 22, 2009).

[14] 155 CONG. REC. S4531, S4543 (daily ed. Apr. 22, 2009).

[15] *United States v. Ceballos-Torres*, 218 F.3d 409, 414 n.6 (5th Cir. 2000), *amended by* 226 F.3d 651 (5th Cir. 2000).

[16] 155 CONG. REC. at S4539.

notes that few courts have seriously engaged with FERA's definition of "obligation."[17] But those that have considered the issue concluded that potential, contingent penalties are not "obligations."[18] As one district court recently stated,

> Plaintiff has failed to identify an "established duty" that would bring this matter within the scope of the FCA. The addition of the phrase "whether or not fixed" to the reverse false claims provision was not meant to cover the type of contingent obligations Plaintiff contemplates—i.e., unadjudicated and unassessed statutory fines. "[The] phrase refers to 'whether or not the amount owed was fixed at the time of the violation' rather than whether an obligation to pay was fixed."

*Nissman*, 2016 WL 1317495, at *14 (quoting *Boise*, 2015 WL 4461793, at *1 n.1) (citation omitted). Simoneaux's only response to those cases is that they are distinguishable because they do not involve "mandatory" penalties. But that notion—addressed below—is distinct from his contention that FERA abrogated the key holding of *Bain* and *Marcy*. He does not explain how the cases incorrectly interpreted the new definition of "obligation."

---

[17] As Simoneaux observes, in several of the cases that duPont relies on, the courts cited pre-FERA cases without discussing the new definition of "obligation." For example, in *Guth*—the Eastern District of Louisiana case that persuaded the district court here to certify its order—the court cited to *Marcy* without addressing FERA. *Guth*, 2014 WL 7274913, at *7. It does not appear that any of the parties raised the issue. On appeal, this court similarly cited *Marcy* without discussing FERA. *Guth*, 626 F. App'x at 534. Simoneaux is right that this weakens the persuasive value of those cases. But he does not offer cases that support his position.

[18] *United States ex rel. Nissman v. Southland Gaming of the Virgin Islands, Inc.*, No. 2011-0010, 2016 WL 1317495, at *14–15 (D.V.I. Mar. 31, 2016); *United States ex rel. Booker v. Pfizer, Inc.*, 9 F. Supp. 3d 34, 49–50 (D. Mass. 2014); *United States ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, No. 12-1562-SLR, 2016 WL 4051266, at *8 (D. Del. July 26, 2016); *United States ex rel. Scharber v. Golden Gate Nat'l Senior Care LLC*, 135 F. Supp. 3d 944, 966 (D. Minn. 2015); *United States ex rel. Boise v. Cephalon, Inc.*, No. CIV. A. 08-287, 2015 WL 4461793, at *1 n.1 (E.D. Pa. July 21, 2015); *United States ex rel. Kane v. Healthfirst, Inc.*, 120 F. Supp. 3d 370, 388 (S.D.N.Y. 2015).

Moreover, Simoneaux's position yields an extraordinarily broad construction of the FCA. If his reading of FERA were correct, reverse-FCA liability could attach from the violation of any federal statute or regulation that imposes penalties. Functionally that means the FCA permits blanket trebling of all federal penalties, so long as the violator knowingly conceals his violation of the regulation. *See* 31 U.S.C. § 3729(a)(1)(G). It also means any such violation leads to a civil FCA penalty "of not less than $5,000 and not more than $10,000, as adjusted [for inflation]." *Id.* That result would apply even to the most minor infractions.

For example, 45 C.F.R. § 3.42(e) prohibits roller-skating at the National Institutes of Health, and a person violating that regulation "shall be fined under title 18, United States Code, imprisoned for not more than 30 days, or both." 40 U.S.C. § 1315(c)(A). Under Simoneaux's reasoning, roller-skating at the NIH results in a penalty "of not less than $5,000" and three times the fine assessed under Title 18.[19] And any private person who saw the roller-skater could bring a *qui tam* action against him. The statutory definition of "obligation" cannot bear the weight of that interpretation.

In sum, FERA did not upset *Bain* and *Marcy*'s holding that unassessed regulatory penalties are not obligations under the FCA. For FCA liability to attach, there must be an "established" duty "to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Where, as in this case, a regulatory penalty has not been assessed and the government has initiated no proceeding to assess it, there is no established duty to pay.

To be clear, the fact that further governmental action is required to

---

[19] The fact that the FCA penalty likely will vastly outweigh the Title 18 fine is further evidence that Congress did not intend the FCA to operate as Simoneaux describes.

collect a fine or penalty does not, standing alone, mean that a duty is not established. For example, failure to pay customs duties on mismarked goods can give rise to an FCA claim. *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 254–55 (3d Cir. 2016). The distinction is that the customs law imposes a duty to *pay*.[20] In contrast, most regulatory statutes, such as the TSCA, impose only a duty to obey the law, and the duty to *pay* regulatory penalties is not "established" until the penalties are assessed.

## C.

Under 15 U.S.C. § 2615(a)(1), any person who violates certain provisions of the TSCA, including Section 8(e), "shall be liable to the United States for a civil penalty in an amount not to exceed $37,500 for each such violation. Each day such a violation continues shall, for purposes of this subsection, constitute a separate violation . . . ." Simoneaux asserts that violation of Section 8(e) leads to "mandatory" penalties because the duty to pay "is established at the statutory level." He emphasizes the phrase "shall be liable" in Section 2615(a)(1). In contrast, duPont maintains that Section 2615(a) grants the EPA discretion to determine whether a penalty should be assessed. Accordingly, it urges, TSCA penalties are contingent and fall within the holding of *Bain* and *Marcy*. We agree with duPont.

By its plain terms, the statute gives the EPA discretion to decide to assess no penalty:

---

[20] Title 19 U.S.C. § 1304(i), at issue in *Customs Fraud*, states,

If at the time of importation any article [is not properly marked] there shall be levied, collected, and paid upon such article a duty of 10 per centum ad valorem, which shall be deemed to have accrued at the time of importation, shall not be construed to be penal, and shall not be remitted wholly or in part nor shall payment thereof be avoidable for any cause.

> In determining the amount of a civil penalty, the Administrator shall take into account the nature, circumstances, extent, and gravity of the violation or violations and, with respect to the violator, ability to pay, effect on ability to continue to do business, any history of prior such violations, the degree of culpability, and such other matters as justice may require.

15 U.S.C. § 2615(a)(2)(B).[21]  Additionally, "[t]he Administrator may compromise, modify, or *remit*, with or without conditions, any civil penalty which *may be imposed* under this subsection."  *Id.* § 2615(a)(2)(C) (emphases added).[22]  Finally, violation of the TSCA can also lead to criminal penalties, which may be imposed "in addition to *or in lieu of* any civil penalty," thus demonstrating that civil penalties are not required.  *Id.* § 2615(b)(1) (emphasis added).  Only one court has addressed whether penalties are mandatory, concluding that the EPA has discretion in deciding whether to impose penalties.[23]

Simoneaux's reliance on *In re Deepwater Horizon*, 753 F.3d 570 (5th Cir. 2014), is misplaced.  There, we described a penalty provision of the CWA as "mandatory." *Id.* at 571.  That provision states that owners of facilities "from which oil or a hazardous substance is discharged . . . shall be subject to a civil

---

[21] In a section on the intent of Congress, the statute also states, "It is the intent of Congress that the Administrator shall carry out this chapter in a reasonable and prudent manner, and that the Administrator shall consider the environmental, economic, and social impact of any action the Administrator takes or proposes as provided under this chapter." 15 U.S.C. § 2601(c).

[22] Simoneaux asserts that the word "remit" implies that there is a "preexisting duty to pay" because there must be something to forgive.  That theory does not withstand scrutiny. Under Simoneaux's view, even if the EPA had decided to impose a penalty of *zero*, thereby exercising its power to remit, duPont would still be liable under the FCA for the period in between violation and remittitur.  But liable for what?  Simoneaux has to say that in that interim period, duPont had some amorphous duty to pay a penalty somewhere between $0 and $37,500 per day, notwithstanding the fact that the EPA ultimately adjudicated the value at zero.  The text of the TSCA does not support the existence of such a Schrödinger's Penalty.

[23] *N'Jai v. U.S. EPA*, No. 13-1212, 2014 WL 2508289, at *17 (W.D. Pa. June 4, 2014) ("Despite the statute's use of the word 'shall,' the foregoing provisions do not demonstrate a Congressional intent to circumscribe the EPA Administrator's enforcement discretion.").

penalty . . . ." 33 U.S.C. § 1321(b)(7)(A). Simoneaux contends that that language is similar to the "shall be liable to the United States" language of TSCA Section 8(e) and thus supports his mandatory-penalty theory. But his argument is flawed in two ways.

First, the statutes are not comparable. Though the TSCA expressly allows for remittitur of any penalty, the relevant provision of the CWA makes no such allowance. *See* 33 U.S.C. § 1321(b). Second, we did not hold (and have never held) that regulatory penalties are "mandatory" in the sense that Simoneaux is arguing. His theory is that a duty to pay arises at the moment Section 8(e) is violated. But penalties under the CWA are mandatory only in the sense that "*once a violation has been established*, some form of penalty is required."[24]

## IV.

DuPont contends that because Simoneaux has failed to state a viable claim under the FCA, his FCA retaliation claim fails as a matter of law. Simoneaux asserts that the issue is outside this court's appellate jurisdiction, since duPont did not raise it in the district court. Because we agree with Simoneaux, we dismiss the appeal of the retaliation claim for lack of jurisdiction.

"Under § 1292(b), it is the order, not the question, that is appealable."[25]

---

[24] *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1142 (11th Cir. 1990) (emphasis added); *see also Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 1001 (9th Cir. 2000) ("*If a district court finds a violation*, then civil penalties . . . are mandatory.") (emphasis added). These decisions, all outside of the FCA context, merely clarify that a district court or agency cannot simultaneously find a person liable under 33 U.S.C. § 1319(d) *and* impose a penalty of zero. *See Deepwater Horizon*, 753 F.3d at 575 n.11. They do not create an exception to *Bain* and *Marcy*'s rule that regulatory penalties are not "established" in advance of assessment.

[25] *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 398 (5th Cir. 2010) (en banc) (citing *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996)).

"The court of appeals may not reach beyond the certified order to address other orders made in the case. But the appellate court may address any issue fairly included within the certified order . . . ."[26] Moreover, even if we have power to address an issue on interlocutory review, we can exercise our discretion to decline that jurisdiction.[27]

The jurisdictional question turns on whether duPont's retaliation argument is "fairly included" in the certified order. We have found an issue to be fairly included when it was raised in the district court and the parties presented it in their appellate briefs.[28] On the other hand, an issue was not fairly included when it was not raised in the district court.[29]

On appeal, duPont advances a new argument with respect to Simoneaux's retaliation claim. In the district court, it posited that Simoneaux had failed to show that he engaged in protected activity because there was no evidence that his complaints related to a concern that duPont was defrauding the government. On appeal, however, duPont contends that Simoneaux could not have engaged in protected activity because he has not established a viable FCA claim. Those are distinct legal theories that rely on different authorities.[30]

---

[26] *Yamaha*, 516 U.S. at 205 (citation omitted); *Accord Koch Foods of Miss., L.L.C. v. EEOC*, 838 F.3d 540, 548 n.16 (5th Cir. 2016) (citing cases).

[27] *Castellanos-Contreras*, 622 F.3d at 399; *see also Yamaha*, 516 U.S. at 205 ("[T]he appellate court *may* address any issue fairly included within the certified order . . . .") (emphasis added); *United States v. Caremark, Inc.*, 634 F.3d 808, 811 n.1 (5th Cir. 2011) ("[W]here an issue is not fully developed in the district court, we may decline to reach it [on interlocutory appeal].").

[28] *Melder v. Allstate Corp.*, 404 F.3d 328, 330–31 (5th Cir. 2005); *see also Caremark*, 634 F.3d at 815 n.8.

[29] *Dehoyos v. Allstate Corp.*, 345 F.3d 290, 297 n.5 (5th Cir. 2003).

[30] In the district court, duPont did not even cite the case it now relies on for its nonviability theory.

Indeed, duPont acknowledges, perhaps inadvertently, that they are distinct.[31]

DuPont maintains, however, that its argument in the district court was not limited to whether Simoneaux complained of fraud, but instead was that Simoneaux could not prove the elements of retaliation. DuPont seems to suggest that by advancing one theory of why Simoneaux did not engage in protected activity, it has "fairly included" all other such theories. Such a conception of "fairly included" is too broad, and this court has rejected a similar contention.[32]

Moreover, duPont's position runs counter to our waiver jurisprudence, which requires more than a cursory mention of an issue to deem it "raised."[33] Thus, the issue of whether Simoneaux's retaliation claim fails as a matter of law because he cannot establish a viable FCA claim was not fairly included in the district court's order, and so we have no appellate jurisdiction over it.

---

[31] DuPont states, "Further, the court in *George* does not actually discuss whether there was a *viable* FCA claim, but rather whether the plaintiff's internal complaints were focused on fraud on the government."

[32] *See Dehoyos*, 345 F.3d at 297 n.5 (citations and quotation marks omitted) There, we stated,

> Appellants also urge us to entertain two additional theories of preemption. The first argument, dubbed the "filed rate" argument, is presented to us for the first time in this interlocutory appeal. . . . [W]e consider issues raised for the first time on appeal only in extraordinary instances . . . to avoid a miscarriage of justice. Moreover, although we have discretion to review on interlocutory appeal those issues which are "fairly included" in the appeal, we do not deem this argument to be fairly included, as it is, at best, ancillary to Appellants' primary arguments in support of preemption.

[33] *E.g.*, *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court. If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal."); *McIntosh v. Partridge*, 540 F.3d 315, 325 n.12 (5th Cir. 2008) ("In his brief, McIntosh occasionally mentions an 'equal protection' claim in conjunction with his due process claim, but this claim is inadequately briefed and is hence waived."); *Raj v. La. State Univ.*, 714 F.3d 322, 330 (5th Cir. 2013); *Frazin v. Haynes & Boone, L.L.P. (In re Frazin)*, 732 F.3d 313, 324 (5th Cir. 2013).

The denial of summary judgment for duPont on the reverse-FCA claim is REVERSED and REMANDED. With respect to the retaliation claim, the appeal is DISMISSED for lack of appellate jurisdiction.