22-1854-cv
*United States ex rel. Billington v. HCL Techs. Ltd.*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2022

(Argued: April 21, 2023     Decided: January 23, 2025)

No. 22-1854

_____

UNITED STATES OF AMERICA EX REL. RALPH BILLINGTON, MICHAEL ACEVES, AND SHARON DORMAN,

*Plaintiffs-Appellants*,

— v. —

HCL TECHNOLOGIES LTD. AND HCL AMERICA, INC.,

*Defendants-Appellees*.

_____

Before:     WALKER, PARKER, and BIANCO, *Circuit Judges*

Plaintiffs-Relators Ralph Billington, Michael Aceves, and Sharon Dorman (collectively, "relators") filed this *qui tam* action against Defendants-Appellees HCL Technologies Ltd. and HCL America, Inc. (together, "HCL"), alleging that HCL defrauded the United States when they applied for and secured visas for foreign employees, primarily citizens from India, to work in the United States and thereby avoided paying higher salaries to American citizens. In their Fourth Amended Complaint, relators assert, *inter alia*, that this alleged fraudulent scheme violated the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), by: (1) avoiding or decreasing an obligation to pay the government tax revenues when it underpaid

1

its H-1B visa workers, and (2) avoiding or decreasing an obligation to pay the government visa application fees when it applied for less expensive visas for workers who required the more expensive H-1B visas. The United States District Court for the District of Connecticut (Merriam, *Judge*) dismissed all of relators' claims, concluding, *inter alia*, that relators could not demonstrate that HCL avoided or decreased any established obligation to pay money to the United States, as required for a "reverse FCA claim" under 31 U.S.C. § 3729(a)(1)(G). Specifically, the district court concluded that there was no established obligation for HCL to pay federal payroll taxes on wages higher than those HCL actually paid their H-1B employees because HCL never paid any wages that supported such taxes. Additionally, it concluded that there was no obligation for HCL to pay the government a more expensive H-1B visa application fee when it submitted applications for B-1 and L-1 visas for certain employees. We agree with the district court that relators failed to state a plausible claim that HCL decreased or avoided an established obligation to pay money to the United States in the form of higher taxes or the higher visa application fees. Accordingly, we **AFFIRM** the district court's judgment.

DANIEL KOTCHEN, Kotchen & Low LLP, Washington, District of Columbia, *for Plaintiffs/Relators-Appellants*.

DAVID L. SCHENBERG, Ogletree, Deakins, Nash, Smoak & Stewart, P.C., St. Louis, Missouri, *for Defendants-Appellees*.

JOSEPH F. BIANCO, *Circuit Judge*:

Plaintiffs-Relators Ralph Billington, Michael Aceves, and Sharon Dorman (collectively, "relators") filed this *qui tam* action against Defendants-Appellees HCL Technologies Ltd. and HCL America, Inc. (collectively, "HCL"), alleging that HCL defrauded the United States when they applied for and secured visas for

foreign employees, primarily citizens from India, to work in the United States and thereby avoided paying higher salaries to American citizens. In their Fourth Amended Complaint, relators assert, *inter alia*, that this alleged fraudulent scheme violated the False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA"), by: (1) avoiding or decreasing an obligation to pay the government tax revenues when it underpaid its H-1B visa workers, and (2) avoiding or decreasing an obligation to pay the government visa application fees when it applied for less expensive visas for workers who required the more expensive H-1B visas. The United States District Court for the District of Connecticut (Merriam, *Judge*) dismissed all of relators' claims, concluding, *inter alia*, that relators could not demonstrate that HCL avoided or decreased any established obligation to pay money to the United States, as required for a "reverse FCA claim" under 31 U.S.C. § 3729(a)(1)(G).

Specifically, the district court concluded that there was no established obligation for HCL to pay federal payroll taxes on wages higher than those HCL actually paid their H-1B employees because HCL never paid any wages that supported such taxes. Additionally, it concluded that there was no obligation for HCL to pay the government a more expensive H-1B visa application fee when it submitted applications for B-1 and L-1 visas for certain employees. We agree with

3

the district court that relators failed to state a plausible claim that HCL decreased or avoided an established obligation to pay money to the United States in the form of higher taxes or the higher visa application fees.

Accordingly, we **AFFIRM** the district court's judgment.

## BACKGROUND[1]

Relators are former employees of HCL, which provides information technology services, products, and engineering, including business consulting and outsourcing services, to clients worldwide. As a means of reducing costs for providing technology services in America, HCL employs foreign workers—primarily Indian citizens—in the United States. HCL applies for and secures three different types of visas for these foreign employees: H-1B, L-1, and B-1 visas.

H-1B visas are intended to bring foreign workers to the United States to work when there are insufficient workers in the United States to perform a specific job. The United States issues only a limited number of H-1B visas each year and awards them through a competitive lottery process. An employer that employs a foreign worker on an H-1B visa is required by Department of Labor regulations to pay that employee a wage that is at least equal to the wage paid to American

---

[1] The facts set forth below are drawn from relators' Fourth Amended Complaint.

4

workers for the same work in the same geographical location. *See* 20 C.F.R. § 655.731(a). A petitioning employer must also submit an attestation with its H-1B visa application affirming that it will do so.

The L-1 and B-1 visas, by contrast, have no such requirements. The L-1 visas are intended for a narrower range of workers—namely, management-level employees and subject-matter experts. The B-1 visas are short-term visitor visas that allow foreign nationals to temporarily enter the United States for limited business purposes. The United States does not cap the number of L-1 and B-1 visas it issues each year. In addition, the application fees for the L-1 and B-1 visas are less than that for an H-1B visa.

Relators brought this *qui tam* suit under the FCA, alleging that "HCL engages in visa fraud so that it can import and employ cheap labor (primarily from India) in the U.S. and avoid having to employ higher-priced Americans." App'x at 35. As relevant on appeal, relators allege that HCL evaded this visa regulatory system and thereby avoided or decreased obligations to pay the United States government money in two principal ways.[2] First, relators claim that HCL

---

[2] Relators also brought FCA claims based on the theory that HCL's allegedly fraudulent visa applications deprived the United States of a property interest in visas. The district court dismissed those claims because it found that a visa is not property for purposes of the FCA. Relators do not appeal the dismissal of those claims.

5

allegedly paid its H-1B visa workers up to 70% less than it would pay a similarly situated American hire, in violation of 20 C.F.R. § 655.731(a). This underpayment, in turn, deprived the government of tax revenue because "by failing to pay its H-1B employees the required prevailing wage, HCL has reduced the amount of federal payroll tax it otherwise would have been required to pay the federal government." App'x at 72, ¶ 112. Second, relators allege that HCL falsified workers' roles and qualifications on visa applications to obtain L-1 and B-1 visas for employees whom HCL intended to perform work requiring an H-1B visa. In doing so, relators contend, HCL deprived the federal government of the higher H-1B visa application fees.

On HCL's motion, the district court dismissed all of relators' claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *See generally United States ex rel. Billington v. HCL Techs. Ltd.*, No. 19-CV-1185 (SALM), 2022 WL 2981592 (D. Conn. July 28, 2022). As to relators' tax-based claim, the district court concluded that "[a]t the time of the alleged misconduct, defendants did not have an established obligation to pay higher payroll taxes because defendants were not paying any wages that supported such taxes." *Id.* at *10. The district court similarly dismissed relators' visa fee-based claim because HCL's

6

"obligation to pay the government arose only upon applying for a visa," and thus "at the time of the alleged misconduct, the only 'established' obligation was payment for the visa applications actually submitted." *Id.* (emphasis omitted). This appeal followed.

## DISCUSSION

"This Court reviews *de novo* the grant of a motion to dismiss under Rule 12(b)(6), accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 104 (2d Cir. 2021) (alteration adopted) (internal quotation marks and citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

The False Claims Act "imposes significant penalties on those who defraud the Government." *Universal Health Servs., Inc. v. United States ex. rel. Escobar*, 579 U.S. 176, 180 (2016). The FCA, however, is "not an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Id.* at 194 (internal quotation marks and citation omitted). As relevant

7

here, the FCA contains a "reverse false claim provision, which covers claims of money *owed* to the government, rather than payments *made* by the government." *Miller v. United States ex rel. Miller*, 110 F.4th 533, 542 (2d Cir. 2024) (emphasis in original) (internal quotation marks and citation omitted). That provision imposes liability on a person who:

> knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government. . . .

31 U.S.C. § 3729(a)(1)(G).

Congress effectuated this statutory language in 2009 by enacting the Fraud Enforcement and Recovery Act ("FERA"), which amended the previous version of the FCA's reverse false claim provision in two significant ways. First, FERA added the following phrase to the reverse false claim provision: "or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). Second, Congress defined the term "obligation" as "an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-

licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment."[3] *Id.* § 3729(b)(3).

"[A] *qui tam* plaintiff does not state a reverse false claim if the defendant does not have an obligation—that is, an established duty—to pay the government." *Miller*, 110 F.4th at 544. We have recently clarified what it means for a duty to be "established" under the amended FCA. In *Miller*, we explained that an "established duty" to "pay or transmit money or property to the Government" must be "one that is already secured or settled." *Id.* at 545 (internal quotation marks omitted). We therefore held that "a duty to pay is 'established' only when it triggers an *immediate* and *self-executing* duty to pay." *Id.* (emphasis added). We noted that this holding aligned with decisions in our sister courts, which have concluded that "potential or contingent exposure to penalties does not

---

[3] The definition resolved a pre-2009 circuit split over whether the obligation needed to be for a fixed sum of money, but enshrined the general circuit consensus that an obligation could not be a contingent one. *See United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1038 (5th Cir. 2016) (concluding that "'whether or not fixed' resolved the active dispute [among circuits] over whether an obligation could be for an uncertain sum, while 'established' confirmed the accepted holding that contingent penalties are not obligations under the FCA"); *see also United States ex rel. Lesnik v. ISM Vuzem d.o.o.*, 112 F.4th 816, 819–20 (9th Cir. 2024) (noting that Congress confirmed that an "obligation cannot be merely a potential liability" when it added the definition of "obligation" to the FCA in 2009, which "requires that a legal obligation to pay the government be 'established' at the time the false statement or record is made" (internal quotation marks and citation omitted)).

9

create an 'established' duty to pay and, accordingly, an obligation does not exist by the mere fact of a violation." *Id*.; *see id.* at n.5 (collecting cases from the Fifth, Tenth, and D.C. Circuits).

## I.     Tax-Based Claim

Relators' first claim is that HCL avoided or decreased its obligation to pay the government money in the form of payroll taxes. Relators contend that HCL had an obligation, under 20 C.F.R. § 655.731(a), to pay its H-1B workers at least the same wage it pays non-visa employees. By allegedly paying H-1B workers below this mandated wage, relators assert that HCL avoided or decreased its obligation, under 26 U.S.C. § 3111(a), to pay the government the taxes associated with the higher wage. We agree with the district court that this claim fails because HCL did not have an "obligation" under the FCA to pay taxes for wages it never in fact paid.

Although relators focus on the Department of Labor regulation, 20 C.F.R. § 655.731(a), that is not the obligation at issue for purposes of the FCA. That regulation, in relators' own words, obligates HCL "to pay H-1B visa employees" a certain wage. Appellants' Br. at 34. However, the relevant obligation—or the established duty—under the FCA must be "a duty to pay or transmit money or

10

property *to the Government*." *Miller*, 10 F.4th at 545 (emphasis added) (internal quotation marks and citation omitted). The duty to pay the government money arises not from 20 C.F.R. § 655.731(a), but instead from the Internal Revenue Code. In particular, relators point to Section 3111(a), which provides that every employer must pay "an excise tax . . . equal to 6.2 percent of the wages (as defined in section 3121(a)) *paid* by the employer with respect to employment." 26 U.S.C. § 3111(a) (emphasis added). That provision requires an employer to pay taxes equal to a percentage of the wages it *actually paid* to its employees. *See* 26 U.S.C. § 3121(a)(1) (instructing that to calculate taxes imposed by Section 3111(a), the appropriate remuneration is based on what is "paid to an individual by an employer during the calendar year").

Here, relators do not allege that HCL avoided or decreased its obligation to pay the required taxes for the wages it in fact paid its H-1B employees. Instead, relators claim that HCL avoided or decreased an obligation to pay taxes for wages it *should have* paid, but did not pay, its employees. However, under Section 3111(a), an obligation to pay taxes on the higher wages would trigger if, and only if, HCL *actually* paid its employees the higher wage. This hypothetical scenario never occurred, and there was therefore no "immediate and self-

11

executing duty to pay" the higher taxes to the government. *Miller*, 110 F.4th at 545.

For this reason, relators' tax-based claim fails to constitute a reverse false claim

under the FCA.[4]

## II. Visa Fee-Based Claim

Relators next argue that HCL avoided or decreased its obligation to pay

higher H-1B visa application fees by fraudulently obtaining cheaper L-1 or B-1

visas instead. We conclude that this claim similarly fails because HCL did not

have an "obligation" to pay a fee for an application it never submitted.

An employer has a duty to pay the appropriate fee for the visa application

it submits on behalf of an employee. *See* USCIS Form G-1055 at 1 ("Each

application, petition, or request must be accompanied by the correct fee(s).").

Relators do not allege that HCL failed to pay the appropriate fees for the visa

applications it actually submitted. Nor do relators allege that HCL somehow

obtained H-1B visas through applying for L-1 and B-1 visas. Instead, relators

assert that HCL violated the law by fraudulently applying for L-1 and B-1 visas

---

[4] Because we affirm the district court's decision that there was no obligation under the FCA, we decline to reach HCL's separate argument that the tax-based FCA claim is precluded by the FCA's Tax Bar. *See* 31 U.S.C. § 3729(d).

12

for employees it knew would perform work requiring an H-1B visa; thus, HCL *should have* applied for H-1B visas and paid the associated higher application fee.

However, an obligation to pay higher visa application fees "does not exist by the mere fact of a violation" of immigration laws because that violation does not "trigger[] an immediate and self-executing duty to pay" the government those fees. *Miller*, 110 F.4th at 545. In other words, although HCL may incur liability for violating applicable immigration statutes or regulations, the penalties it would consequently face—potential and contingent ones to be sure—would not include fees for visa applications HCL never submitted. Indeed, the Ninth Circuit as well as one district court have recently rejected identical reverse FCA claims on similar grounds. *See United States ex rel. Lesnik v. ISM Vuzem d.o.o.*, 112 F.4th 816, 820 (9th Cir. 2024) (concluding that defendants "had no 'established duty' to pay for visas for which they did not apply"); *United States ex rel. Kini v. Tata Consultancy Servs., Ltd.*, No. 17-cv-2526 (TSC), 2024 WL 474260, at *4 (D.D.C. Feb. 7, 2024) ("[H]ad Defendant applied for H-1B visas, regulations would have created an obligation for it to pay the application fees. But here, Defendant did not owe application fees because it did not apply for H-1B visas; it applied for L-1 and B-1 visas.").[5]

---

[5] We find unpersuasive the sole opinion to conclude otherwise. In *Franchitti v. Cognizant Technology Solutions Corp.*, 555 F. Supp. 3d 63 (D.N.J. 2021), a district court allowed a

13

Relators' reliance on *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189 (10th Cir. 2006) is misplaced. In *Conagra*, a meat and animal hide exporter allegedly altered and forged export certificates issued by the United States Department of Agriculture ("USDA") to correct inaccuracies contained therein when it was instead required to obtain replacement certificates from the government addressing those inaccuracies and pay the government an associated fee. *Id*. at 1193–94. Under the specific USDA regulatory scheme there, an "obligation" to pay was triggered whenever there was a determination "that the original certificate contains a major or significant error or omission" such that a "replacement certificate and payment of the accompanying fee are necessary." *Id.* at 1202. The *Conagra* court concluded that "the[se] circumstances are analogous to a motorist who attempts to avoid an annual fee by unlawfully altering the expiration date on a license plate," and pointed out that an obligation to pay exists

substantially similar claim to proceed because it believed that the "plain language reading of the [FCA] suggests that [defendant] had an obligation to pay the appropriate fee for the privileges associated with its desired visa." *Id.* at 71. As the Ninth Circuit pointed out in *Lesnik*, however, the FCA does not define "obligation" as such, nor did the district court "identif[y] any legal authority that would establish such an obligation." 112 F.4th at 820; *see also Kini*, 2024 WL 474260, at *5 (explaining that *Franchitti* is unpersuasive because "the notion that Defendant 'desired' H-1B visas rests on a legal fiction. . . . Relator did not allege that Defendant sought H-1B visas or hoped to receive H-1B visas when it applied for L-1 and B-1 visas.").

because the licensing regime creates the automatic duty to pay the annual fee at "the end of the yearly period." *Id.* at 1202–03. Thus, as the Tenth Circuit itself has subsequently explained, "the obligation [in] *Conagra* was *automatic*: Conagra employees determining that changes to the certificates were necessary triggered a legally established duty to pay the USDA to issue new certificates." *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 878 F.3d 1224, 1233 (10th Cir. 2017) (emphasis added). By contrast, while an employer may ultimately face penalties for failing to comply with the applicable immigration laws, relators identify no provision in the visa regulatory framework that imposes an affirmative, *automatic* duty on the employer to submit an H-1B application (and pay the associated fee) at the point in time the employer determines that it requires a foreign worker to come to the United States to perform H-1B work. In any case, "to the extent that *Conagra* held that application fees are 'obliged' for certificates the defendant did not apply for," it is "flatly inconsistent with" our circuit's reasoning in *Miller*. *Kini*, 2024 WL 474260, at *5; *see Miller*, 110 F.4th at 545.

In sum, we agree with the district court that "there was no 'established duty' for [HCL] to pay a fee for visa applications that were never submitted." *Billington*, 2022 WL 2981592, at *10.

**CONCLUSION**

We have considered relators' remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.