In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 14-2190

CRAIG PATRICK and
MICHELE PATRICK,

*Petitioners-Appellants*,

*v.*

COMMISSIONER OF INTERNAL REVENUE,

*Respondent-Appellee*.

_____

Appeal from the United States Tax Court.
No. 16387-12 — **Diane L. Kroupa**, *Judge*.

_____

ARGUED JANUARY 7, 2015 — DECIDED AUGUST 26, 2015

_____

Before RIPPLE, WILLIAMS, and SYKES, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. This case concerns the proper tax treatment of nearly $7 million that the government paid Craig Patrick for uncovering a Medicaid fraud scheme where the government paid in excess of $75 million in phony billings. Patrick and an associate filed a *qui tam* suit under the False Claims Act against Kyphon, Inc. alleging that the company induced hospitals to file claims for Medicare reim-

bursement "for unnecessary inpatient hospital stays." The United States intervened and settled the case. For his role in initiating the suit Patrick received a relator's share of the government's recovery, totaling $5.9 million. Patrick also received $900,000 from the settlement of related *qui tam* actions against hospitals that overbilled Medicare.

Patrick and his wife, Michele, filed joint tax returns for 2008 and 2009 reporting his share of the *qui tam* recoveries as capital gains. The Commissioner of Internal Revenue issued deficiency notices, notifying the Patricks that the relator's shares must be reported as ordinary income. The Tax Court upheld that determination. We agree with the Commissioner and the Tax Court that the relator's share of a *qui tam* recovery is not the result of a "gain from the sale or exchange of a capital asset." Rather, Patrick's relator's shares are a reward for filing the suit against Kyphon and the hospitals and must be treated as ordinary income.

## I. BACKGROUND

Craig Patrick worked as a reimbursement manager for Kyphon, a company that designs, manufactures, and sells medical equipment to treat spinal conditions. The company developed a procedure called a "kyphoplasty" that could be performed on an outpatient basis. But Kyphon feared that medical providers would be reluctant to purchase the equipment if they could not bill for an overnight hospital stay. As a result, Kyphon marketed its treatment as an inpatient procedure that required the patient to stay overnight, thereby allowing providers to collect larger reimbursements from Medicare for the unnecessary hospital stays.

In 2005, Patrick and a former Kyphon salesperson jointly filed a *qui tam* action under the False Claims Act, 31 U.S.C. §§ 3729–33, alleging that Kyphon had defrauded the government. The False Claims Act imposes liability on any person who presents to the United States "a false or fraudulent claim for payment or approval," *see id*. § 3729(a)(1)(A), and permits a private person—called a "relator"—to bring suit on behalf of the government, *see id*. § 3730(b)(1). The relator must serve the government with a copy of the complaint and supporting evidence so that the government may decide whether to intervene in the suit. *See id*. § 3730(b)(2), (4). If the government intervenes and wins the suit using primarily non-public information provided by the relator, the relator is entitled to receive between fifteen and twenty-five percent of the recovery. *See id*. § 3730(d)(1).

After reviewing Patrick's *qui tam* suit against Kyphon, the government exercised its option to intervene and reached a settlement with Kyphon that required the company to pay it over $75 million. Because the government had obtained the recovery based primarily on non-public information provided by Patrick and his co-relator, they received a portion of the recovery, with Patrick taking home more than $5.9 million.

After the settlement, Patrick and his co-relator filed similar suits under the False Claims Act against hospitals that had billed Medicare for the kyphoplasty procedure as an in-patient treatment. The hospitals settled those suits, and Patrick received almost $900,000 for his involvement as a relator.

When tax season arrived, Patrick and his wife jointly filed a 2008 return that reported Patrick's share of the set-

tlement with Kyphon as a capital gain. The couple also filed a 2009 tax return that reported the money Patrick received from the hospital settlements as capital gains.

The Commissioner sent the couple deficiency notices for both tax years. The notices explained that Patrick's *qui tam* recoveries were "other income rather than a capital gain," and thus, were taxable at the higher rate applicable to ordinary income. Using that higher tax rate, the Commissioner determined that the Patricks owed an additional $716,883 for 2008 and $94,714 for 2009.

The Patricks petitioned the Tax Court for redetermination of the tax deficiencies. But the court concluded that the *qui tam* recoveries were properly characterized as ordinary income, not capital gains. This appeal followed.

## II. ANALYSIS

Resolution of the appeal requires this court to decide whether a relator's share is a "gain from the sale or exchange of a capital asset," 26 U.S.C. § 1222(1), (3) (defining "capital gain"), or a reward intended to compensate the relator for his work in bringing the *qui tam* suit. If the relator's share constitutes a payment for services, the Patricks must claim the award as ordinary income. *See Canal-Randolph Corp. v. United States*, 568 F.2d 28, 32 (7th Cir. 1977); *Bouchard v. Comm'r*, 229 F.2d 703, 704 (7th Cir. 1956). This court has never addressed the question of how a relator's share of a recovery must be characterized under the Internal Revenue Code. The only other circuit to resolve the issue concluded that a relator's share is ordinary income because it operates as a bounty for the relator's work in filing the *qui tam* suit,

*see Alderson v. United States*, 686 F.3d 791 (9th Cir. 2012), and we agree.

Courts have consistently described a relator's share as a "bounty" or "reward" for the efforts a relator puts forth to gather evidence and file a *qui tam* suit. *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 772 (2000) (stating that relator's "bounty is simply the fee he receives *out of the United States' recovery* for filing and/or prosecuting a successful action on behalf of the Government.") (emphasis in original); *U.S. ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 364 (7th Cir. 2010) (explaining that relator's award compensates for relator's "services" and "work to uncover fraud"); *Roberts v. Accenture, LLP*, 707 F.3d 1011, 1016 (8th Cir. 2013) (referring to relator's share as "finder's fee"); *Alderson*, 686 F.3d at 795; *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 752 (5th Cir. 2001) (describing relator's share as "reward"). This line of cases suggests that a relator's award is a payment for services performed, and therefore, that the award must be claimed as ordinary income. *See Canal-Randolph Corp.*, 568 F.2d at 32; *Bouchard*, 229 F.2d at 704.

Treating a relator's reward as a capital gain would contravene the long-recognized rule that a "capital gain" generally involves a "realization of appreciation in value accrued over a substantial period of time" of an initial investment of capital. *Comm'r v. Gillette Motor Transp., Inc.*, 364 U.S. 130, 134–35 (1960); *see also Alderson*, 686 F.3d at 797. But here Patrick made no initial investment in some asset. Instead, he expended time and effort to discover and document Kyphon's fraud, and that work was not an investment of capital. *See Alderson*, 686 F.3d at 797. Further, there was no "realization of appreciation in value" of an underlying invest-

ment that "accrued over a substantial period of time." *Gillette Motor Transp., Inc.*, 364 U.S. at 134. Patrick had an interest in a portion of the government's recovery, but that interest did not grow in value over time. It did not even vest until the government received its recovery. *See Vt. Agency of Natural Res.*, 529 U.S. at 772.

When we turn to the Internal Revenue Code's definition of "capital gain"—a "gain from the sale or exchange of a capital asset," 26 U.S.C. § 1222(1), (3)—we reinforce our conclusion that a relator's award does not qualify for that status. The Internal Revenue Code defines a "capital asset" as "property held by a taxpayer," 26 U.S.C. § 1221, and courts agree that an item is property only if the owner has the right to exclude others from using it, *see Kaiser Aetna v. United States*, 444 U.S. 165, 179–80 (1979); *Minn. Mining & Mfg. Co. v. Pribyl*, 259 F.3d 587, 609 (7th Cir. 2001). The Patricks offer two ways to regard them as having invested a "capital asset" or "property," but neither is persuasive.

First, they maintain that Patrick's "property" was the information that he gathered at Kyphon and, they contend, he had a right to stop others from using it. We do not see it that way. True, Patrick compiled documents that he transferred to the government. But the information contained in those documents—information about Kyphon's fraudulent practices—was available to many other Kyphon employees who could have used the knowledge to file their own *qui tam* suit. The Patricks reply by comparing the information to a trade secret, which may have multiple owners. But even if the information Patrick gathered was secret in the sense that it was nonpublic information, *he* had no right to stop anyone

else from using it, and, thus, the information and documents cannot be his "property." *See Kaiser Aenta*, 444 U.S. at 179–80.

Second, the Patricks contend that Patrick's right to a share of the recovery constitutes a "capital asset," but this argument fares no better. Patrick's award was a payment for his efforts to collect documents and file the *qui tam* suit. *See Vt. Agency of Natural Res.*, 529 U.S. at 772; *Apria Healthcare Grp. Inc.*, 606 F.3d at 364. The Commissioner aptly analogizes this situation to an attorney's interest in payment under a contingency fee arrangement. The attorney's interest in future compensation for legal work, and Patrick's interest in a future award for his investigative work, both constitute an interest in future payment for services. And compensation for services qualifies as ordinary income, not a capital gain. *See Canal-Randolph Corp.*, 568 F.2d at 32; *Bouchard*, 229 F.2d at 704. Because the Patricks have not demonstrated that Patrick possessed a capital asset, his relator's share from the *qui tam* suit cannot constitute a "capital gain." *See* 26 U.S.C. § 1222(1), (3) (defining "capital gain" as a "gain from the sale or exchange of a capital asset").

## III. CONCLUSION

For all the foregoing reasons, the decision of the Tax Court is AFFIRMED.