Reed O'Connor, UNITED STATES DISTRICT JUDGE
Before the Court are Plaintiffs Sharon and Duncan Barnes' Motion for Summary Judgment (ECF No. 16) and Defendant United States of America's Motion for Summary Judgment (ECF No. 19). The motions are fully briefed and ripe for review. Having considered the motions, briefing, and applicable law, the Court finds that Defendant's Motion for Summary Judgment (ECF No. 19) should be and is hereby GRANTED and Plaintiffs' Motion for Summary Judgment (ECF No. 16) should be and is hereby DENIED .
I. BACKGROUND
The following facts are undisputed. See Joint Stipulation, ECF No. 15. On April 4, 2012, Sharon Shadic (whose married name is now Sharon Barnes) filed a qui tam action in the United States District Court for the Southern District of New York, captioned United States of America ex rel. Sharon Shadic v. UFC Aerospace, United Fastener Company, Inc. and Douglas B. Davis, on behalf of the United States of America , pursuant to the qui tam provisions of the False Claims Act, 31 U.S.C. § 3730(b). In that case, the United States sought to recover damages and penalties from defendants under Section 3729, et seq. of the False Claims Act ("FCA"), arising from Defendant UFC misrepresenting itself as a woman-owned small business to obtain government contracts.
The United States intervened in the qui tam action filed by Sharon Shadic on or about October 5, 2015. Shortly thereafter, a Stipulation and Order of Settlement and Dismissal was entered into by the United States, Sharon Shadic (as Relator), and the Defendants in the qui tam action, which called for a settlement payment from Defendants *584 to the United States in the total amount of $ 20,015,956.92. The United States and Sharon Shadic simultaneously entered into a Stipulation and Order of Settlement and Release in which it was agreed that Sharon Shadic was entitled to receive $ 3,602,872.25, or 18%, of the total settlement payment. The Release provides that it "does not resolve or in any manner affect any claims the United States has or may have against the Relator arising under Title 26, U.S. Code (Internal Revenue Code), or any claims arising under this U.S. Relator Release Stipulation."
Plaintiffs Sharon and Duncan Barnes timely filed a joint Form 1040 for the 2015 tax year, reporting the $ 3.6 million relator award on Schedule C, Profit or Loss from Business. The Barnes paid income tax in the amount of $ 914,922.00. Plaintiffs then timely filed an amended Form 1040X for the 2015 tax year, seeking a refund of federal income tax of $ 875,005.00 plus statutory interest, on the basis that settlement proceeds from a qui tam action are not taxable income. The Commissioner of Internal Revenue Service disallowed all but $ 67,912.00 of the amount claimed as a refund. The IRS proposed to re-characterize the relator share award from net business income/profits on Schedule C to Form 1040, line 21, "Other Income," resulting in a refund of $ 67,921.00 of self-employment taxes reported and paid. Plaintiffs Sharon and Duncan Barnes subsequently timely filed this suit for a refund. Before the Court are the parties' cross-motions for summary judgment. ECF No. 16; ECF No. 20.
II. LEGAL STANDARD
Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he substantive law will identify which facts are material." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine dispute as to a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The movant makes a showing that there is no genuine dispute as to any material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ; FED. R. CIV. P. 56(c).
When reviewing the evidence on a motion for summary judgment, the court must resolve all reasonable doubts and inferences in the light most favorable to the non-movant. See Walker v. Sears, Roebuck & Co. , 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. Anderson , 477 U.S. at 255, 106 S.Ct. 2505. If "reasonable minds could differ as to the import of the evidence" regarding the disputed allegations, the motion for summary judgment must be denied. Id. at 250, 106 S.Ct. 2505.
III. ANALYSIS
Plaintiffs move for summary judgment, arguing that a qui tam recovery is not subject to taxation. Br. Supp. Pls.' Mot. Summ. J. 1, ECF No. 17. In the alternative, Plaintiffs argue that qui tam settlement proceeds are taxable as capital gains rather than as ordinary income. Id. Defendant's Motion for Summary Judgment contends that qui tam awards are taxable income. Br. Supp. Def.'s Mot. Summ. J. 5, ECF No. 20. Defendant also argues that qui tam awards are taxed as ordinary income, not capital gains. Def.'s Resp. Pls.' Mot. Summ. J. 4, ECF No. 21. These *585 cross-motions present the Court with two legal issues. First, whether a relator's qui tam award is subject to federal income tax. And if so, whether the award is subject to ordinary income or capital gains treatment.
A. Qui Tam Awards Are Taxable Income
Plaintiffs argue that proper application of the "origin of the claim" doctrine would show that a qui tam award is not subject to taxation. Br. Supp. Pls.' Mot. Summ. J. 3, ECF No. 17. Plaintiffs' argument rests on four premises: (1) under the origin of the claim doctrine, taxability is determined by the origin and nature of the claim to which the recovery relates; (2) assignment does not change the character of proceeds for tax purposes; (3) pursuant to the Supreme Court's holding in Vermont Agency of Nat. Resources v. U.S. ex rel. Stevens , 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000), by filing an action under the FCA, the relator effects a partial assignment of the Government's claim for damages; and (4) the United States does not pay taxes. Br. Supp. Pls.' Mot. Summ. J. 3-4, ECF No. 17. Therefore, Plaintiffs contend that "the partial assignment of the Government's claim to the relator does not alter the non-taxable character of the original claim." Id. For Plaintiffs, any "recovery retains its nontaxable character, whether or not the recipient of the damages is the injured party." Id. Finally, Plaintiffs argue that taxing the relator's award violates the terms of the FCA by effectively increasing the Government's share of the recovery beyond the FCA's 85% statutory cap. Id. at 13.
Defendant responds that, even under the origin of the claim doctrine, qui tam payments are subject to taxes. Def.'s Resp. Pls.'s Mot. Summ. J 2, ECF No. 21. Because qui tam awards compensate for personal services, and are really a bounty or a fee, Defendant argues they constitute ordinary income. Br. Supp. Def.'s Mot. Summ. J. 6, ECF No. 20. Moreover, Defendant contends that in Vermont Agency , the Supreme Court "merely held that the FCA effects a partial assignment of the claim for purposes of standing." Def.'s Resp. Pls.'s Mot. Summ. J 3, ECF No. 21. Finally, Defendant rejects the argument that Plaintiffs should be treated as co-equals with the Government and therefore not be taxed on their award. Id. Defendant argues that the relator acts as an instrumentality of the Government and that the claim belongs to the Government as the injured party. Id.
The Internal Revenue Code ("IRC") broadly defines gross income as "all income from whatever source derived." 26 U.S.C. § 61(a). The Supreme Court has emphasized the "sweeping scope" of the section and notes "that exclusions from income must be narrowly construed." Commissioner v. Schleier , 515 U.S. 323, 327, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1995) (quoting United States v. Burke , 504 U.S. 229, 248, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (Souter, J., concurring in judgment) ). The IRC does not exclude qui tam awards from gross income and the Fifth Circuit has never addressed whether qui tam payments are includable in gross income. However, at least four circuit courts have held that qui tam payments are includable in gross income. See Patrick v. Commissioner , 799 F.3d 885, 888 (7th Cir. 2015) (holding award must be treated as ordinary income); Alderson v. United States , 686 F.3d 791, 798 (9th Cir. 2012) (holding award was ordinary income); Campbell v. Commissioner , 658 F.3d 1255, 1258 (11th Cir. 2011) (holding qui tam payments are the equivalent of a reward and therefore includable in gross income);
*586 Brooks v. United States , 383 F.3d 521, 525 (6th Cir. 2004) (holding award is not excludable from gross income).
Here, the Court finds that qui tam awards are gross income under 26 U.S.C. § 61(a). A qui tam award is a bounty or a reward that the relator receives for uncovering a fraud and bringing the suit, making it subject to taxation. See 26 U.S.C. § 61(a). Text and precedent confirm this. The qui tam provisions of the FCA were "enacted in 1863 to combat fraud by Civil War defense contractors," and authorized "private citizens (called relators) to sue on behalf of the government and, as a bounty, share in any recovery." U.S. ex rel. Newell v. City of St. Paul, Minn. , 728 F.3d 791, 794 (8th Cir. 2013). "Many of the early qui tam statutes allowed citizens to keep part of the recovery gotten by the government as a reward for informing...." Riley v. St. Luke's Episcopal Hosp. , 252 F.3d 749, 773, n.35 (5th Cir. 2001) (emphasis added).
The text of the FCA reveals that the award is commensurate with the relator's role in the suit. For example, in section (d) titled "Award to Qui Tam Plaintiff," the Act states:
(1) If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action . Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation ....
31 U.S.C. § 3730(d)(1) (emphasis added). This language reflects the nature of the qui tam award as one that compensates the relator for his role in the suit.
The Supreme Court, this Circuit, and the majority of circuit courts have also deemed the relator's award a bounty or fee.[1] Black's Law Dictionary defines a bounty as "premium or benefit offered or given, esp. by a government, to induce someone to take action or perform a service." Black's Law Dictionary (10th ed. 2014). Therefore, Plaintiffs' argument that the application of the "origin of the claim"
*587 doctrine precludes taxation of qui tam awards is erroneous, because a qui tam relator's payment is itself in the nature of a bounty or fee that rewards an individual for his assistance in assisting the Government.
Plaintiffs' argument requires improperly characterizing the relator's award and expanding the scope of the Supreme Court's holding in Vermont Agency . Vermont Agency evaluated a relator's Article III standing under the FCA. Vermont Agency , 529 U.S. at 765, 120 S.Ct. 1858. It is in this context that Justice Scalia stated, "the statute gives the relator himself an interest in the lawsuit, and not merely the right to retain a fee out of the recovery." Id. at 772, 120 S.Ct. 1858. Nevertheless, Plaintiffs seek to build their case on that line.
Vermont Agency clarified that "the bounty [the relator] will receive if the suit is successful, is insufficient to confer standing. " Id. at 765, 120 S.Ct. 1858 (emphasis added). And that the "adequate basis for the relator's suit for his bounty is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." Id. Therefore, the "FCA can reasonably be regarded as effecting a partial assignment of the Government's damages claim." Id. Thus, the Supreme Court's analysis in context makes clear that Plaintiffs in qui tam suits have an interest in the lawsuit to satisfy Article III standing. The Supreme Court's decision never altered what a relator's award is-a bounty. For this reason, the Court does not find Plaintiffs' view of Vermont Agency persuasive.
Finally, the Court also finds that taxing the relator's award does not contravene the statutory caps found in the FCA because the language of the FCA limits the relator's award , not the Government's proceeds. See 31 U.S. C. § 3730(d)(1).
Accordingly, the Court DENIES Plaintiffs' Motion for Summary Judgment (ECF No. 16) and GRANTS Defendant's Motion Summary Judgment (ECF No. 20) on the issue of gross income.
B. Ordinary v. Capital Gains Tax
Plaintiffs argue that if the award is subject to taxation, it should be taxed as capital gain and not ordinary income. See Br. Supp. Pl.'s Mot. Summ. J. 11, ECF No. 17. According to Plaintiffs, the accretion in value over the three-year period between the filing and settlement of the lawsuit is a capital gain. See id. Defendants argue that courts have already addressed and rejected Plaintiffs' argument. Def.'s Resp. Pls.' Mot. Summ. J. 6, ECF No. 21. According to Defendant, because the settlement received by Plaintiffs represents a bounty or reward, it should be taxed as ordinary income. Id.
The Internal Revenue Code defines "capital gain" as "gain from the sale or exchange of a capital asset," 26 U.S.C. § 1222(1), (3), and a "capital asset" as "property held by a taxpayer," itation index="45" url="https://cite.case.law/citations/?q=26%20U.S.C.%20%C2%A7%201222">id. § 1221. Whether a relator's share under the FCA is ordinary income or capital gain is a question of first impression in the Fifth Circuit. The two circuit courts that have addressed this question have held that a relator's share is ordinary income, not capital gain. Patrick , 799 F.3d at 888 ; Alderson , 686 F.3d at 798. This Court is not aware of any cases that treat a relator's share as capital gain.
In Patrick v. Commissioner , a couple jointly filed a tax return that reported the relator's share of an FCA settlement as capital gain, and the IRS Commissioner sent the couple a deficiency notice, explaining that qui tam recoveries were "other income rather than a capital gain." 799 F.3d at 888. In the resulting litigation, the Tax Court as well as the Seventh Circuit *588 held that qui tam recoveries are ordinary income. Id. The Seventh Circuit reasoned that a "relator's share is ordinary income because it operates as a bounty for the relator's work in filing the qui tam suit." Id. The Court explained that courts have consistently described a relator's share as a "bounty" or "reward" for the efforts a relator puts forth to gather evidence and file a qui tam suit, and therefore a relator's award is a payment for services performed that must be claimed as ordinary income. Id. In Alderson v. United States , the Ninth Circuit also found that a relator's share is ordinary income as opposed to capital gain. There, the Court stated that the increase in value over the course of the litigation "was not the sort of 'accretion in value' that characterizes a capital gain." 686 F.3d at 798.
The Court finds that the relator's fee is subject to ordinary income taxes. As discussed above, the relator's fee is a bounty or reward for bringing the litigation. Contrary to Plaintiffs' view that the relator's "exclusive interest in the action" makes it "property," Plaintiffs' interest is in future payment for services rendered. See Patrick , 799 F.3d at 888 (analogizing to an attorney's interest under a contingency fee arrangement, the court explained "[t]he attorney's interest in future compensation for legal work, and [the relator's] interest in a future award for his investigative work, both constitute an interest in future payment for services"). As the Seventh Circuit explained, "[t]reating a relator's reward as a capital gain would contravene the long-recognized rule that a 'capital gain' generally involves a 'realization of appreciation in value accrued over a substantial period of time' of an initial investment of capital." See ids="4340169" index="54" url="https://cite.case.law/f3d/799/885/#p888">id. (quoting Commissioner v. Gillette Motor Transp., Inc. , 364 U.S. 130, 134-35, 80 S.Ct. 1497, 4 L.Ed.2d 1617 (1960) ). And like in that case, the relator here "made no initial investment in some asset"; instead the relator "expended time and effort" to discover fraud. Id. Similarly, any "interest" that the relators had in the portion of the recovery did not vest "until the government received its recovery." Id. Thus, Plaintiffs have not demonstrated that they possessed a capital asset, and therefore their share from the qui tam suit cannot constitute a "capital gain." See 26 U.S.C. § 1222(1), (3)
Accordingly, the Court DENIES Plaintiffs' Motion for Summary Judgment (ECF No. 16) and GRANTS Defendant's Motion Summary Judgment (ECF No. 19) on the issue of ordinary income.
IV. CONCLUSION
For the above-mentioned reasons, the Court finds that Defendant's Motion Summary Judgment (ECF No. 19) should be and is hereby GRANTED , and Plaintiffs' Motion for Summary Judgment (ECF No. 16) should be and is hereby DENIED .
SO ORDERED on this 14th day of January, 2019.

See Vermont Agency , 529 U.S. at 772-73, 120 S.Ct. 1858 ; U.S. ex rel. May v. Purdue Pharma L.P. , 811 F.3d 636, 639 (4th Cir. 2016) ; Patrick v. Commissioner , 799 F.3d 885, 888 (7th Cir. 2015) ; U.S. ex rel. Babalola v. Sharma , 746 F.3d 157, 164 (5th Cir. 2014) (Dennis, concurring); U.S. ex rel. Newell v. City of St. Paul, Minn. , 728 F.3d 791, 794 (8th Cir. 2013) ; Alderson v. United States , 686 F.3d 791, 795 (9th Cir. 2012) ; SKF USA, Inc. v. U.S. Cust. and Border Protec. , 556 F.3d 1337, 1375 (Fed. Cir. 2009) ; United Seniors Ass'n, Inc. v. Philip Morris USA , 500 F.3d 19, 25 (1st Cir. 2007) ; U.S. ex rel. Boothe v. Sun Healthcare Group, Inc. , 496 F.3d 1169, 1172 (10th Cir. 2007) ; Ragsdale v. Rubbermaid, Inc. , 193 F.3d 1235, 1237 (11th Cir. 1999) ; U.S. ex rel. Taxpayers Against Fraud v. Gen. Elec. Co. , 41 F.3d 1032, 1035 (6th Cir. 1994) ; U.S. ex rel. Springfield Terminal Ry. Co. v. Quinn , 14 F.3d 645, 649 (D.C. Cir. 1994).