# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 13, 2019    Decided July 5, 2019

No. 18-7123

UNITED STATES OF AMERICA, EX REL. KASOWITZ BENSON
TORRES LLP,
AND
KASOWITZ BENSON TORRES LLP,
APPELLANT

v.

BASF CORPORATION, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-02269)

*Andrew A. Davenport* argued the cause for appellant.
With him on the briefs was *Daniel Benson*.

*Gregory G. Garre* argued the cause for appellees.   On the
brief were *Christopher Landau*, *Alice S. Fisher*, *Anne W.
Robinson*, *Alex Loomis*, *William F. Goodman III*, *Raymond
Cardozo*, *Brian A. Sutherland*, *Steven M. Bauer*, *Fred M.
Haston III*, *Lawrence S. Sher*, and *Seth A. Rosenthal*.   *Ryan
Baasch* entered an appearance.

Before: HENDERSON, SRINIVASAN and PILLARD, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: "Pecunia non satiat avaritiam, sed inritat" translates from Latin to English as "money doesn't satisfy greed; it stimulates it." This case teaches that money also stimulates legal artifice. For over one hundred and fifty years, the False Claims Act (FCA) has imposed civil liability on anyone who defrauds the federal government of money or property. *See generally* Act of March 2, 1863, ch. 67, 12 Stat. 696 (1863) (codified as amended at 31 U.S.C. §§ 3729 *et seq.*). A third party—a relator—may bring an FCA lawsuit on behalf of the government and collect a substantial bounty if he prevails. *See* 31 U.S.C. § 3730(b), (d). Today we review a relator's novel theory of FCA liability.

The law firm Kasowitz Benson Torres LLP (Kasowitz) alleges that a handful of large chemical manufacturers violated the Toxic Substances Control Act, Pub. L. No. 94-469, 90 Stat. 2003 (1976) (codified as amended at 15 U.S.C. §§ 2601 *et seq.*) (TSCA), by repeatedly failing to inform the United States Environmental Protection Agency (EPA) of information regarding the dangers of isocyanate chemicals. Kasowitz claims the defendant-chemical manufacturers' failure to disclose and subsequent actions deprived the government of property (substantial risk information) and money (TSCA civil penalties and contract damages). Kasowitz demands billions of dollars in damages, even though the government openly supports the defendants. The district court dismissed its lawsuit. Kasowitz now appeals, asking us to become the first court to recognize FCA liability based on the defendants' failure to meet a TSCA reporting requirement and on their

failure to pay an unassessed TSCA penalty. We decline the invitation and affirm the dismissal.

## I. BACKGROUND

TSCA requires a chemical manufacturer, *inter alia*, to inform the EPA of substantial risk information—that is, "information which reasonably supports the conclusion that [a] substance or mixture presents a substantial risk of injury to health or the environment." 15 U.S.C. § 2607(e). TSCA authorizes the EPA to take administrative action against any individual or entity that violates the duty to disclose and to impose a civil penalty on a violator. *Id.* § 2615(a)(2)(A)–(C). As part of its role in implementing TSCA, the EPA established the Compliance Audit Program, a "one-time voluntary compliance program designed to strongly encourage companies to voluntarily audit their files" and disclose substantial risk information. Registration and Agreement for TSCA Section 8(e) Compliance Audit Program, 56 Fed. Reg. 4128, 4129 (Feb. 1, 1991). The EPA offered a reduced civil penalty for any tardy disclosure made under the Program and reserved the right to "take appropriate enforcement action" against a violator. *Id.* The Compliance Audit Program was in effect from 1991 to 1996. *See* TSCA Section 8(e); Notification of Substantial Risk; Policy Clarification and Reporting Guidance, 68 Fed. Reg. 33,129, 33,131 (June 3, 2003) (The "EPA reached final settlements with CAP participants, announced those settlements on October 15, 1996, and collected payment for stipulated penalties.").

Kasowitz alleges that the defendants—BASF Corporation, Covestro LLC, Dow Chemical Company and Huntsman International LLC—"manufacture isocyanate chemicals, which are used to produce various polyurethane-based materials such as paint, adhesives, rigid foam for insulation,

flexible foam for mattresses and cushions, and parts for automotive interiors."[1]  *United States ex rel. Kasowitz Benson Torres LLP v. BASF Corp.*, 285 F. Supp. 3d 44, 47 (D.D.C. 2017).  Isocyanate chemicals can, under some circumstances, pose a health hazard if inhaled or exposed to skin.  Beginning in the late 1970s and continuing through the early 2000s, the defendants acquired information about the adverse health effects of isocyanate chemicals.  They did not disclose this information to the EPA, however, not even while participating in the Compliance Audit Program.

Kasowitz sued the defendants under the FCA, alleging that their TSCA violations—and evasion of responsibility for those violations—deprived the government of its money and property.  The defendants allegedly deprived the government of money by failing to pay TSCA and Compliance Audit Program civil penalties and by concealing their liability from the EPA.  And the defendants allegedly deprived the government of property in the form of undisclosed substantial risk information regarding isocyanate chemicals.  The complaint's first four counts allege violations of the FCA's reverse false claim provision[2] (Counts One, Two and Four)

---

[1]  Because this appeal comes to us at the motion-to-dismiss stage, we "accept as true all of the complaint's factual allegations." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018).

[2]  The reverse false claims provision specifies that: "any person who . . .  knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government . . . is liable to the United States Government."  31 U.S.C. § 3729(a)(1)(G).

and conversion provision (Count Three).[3]   Count Five alleges that the defendants engaged in a conspiracy to violate the FCA. The defendants moved to dismiss the case for failure to state a claim upon which relief can be granted.  *BASF Corp.*, 285 F. Supp. 3d at 46–47, 49.   The district court rejected Kasowitz's legal theories and accordingly granted the motion.  *Id.* at 50–56.   Kasowitz timely appealed.

## II. ANALYSIS

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint must include factual allegations that establish a plausible claim to relief.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiff must plead "enough facts to state a claim to relief that is plausible on its face").   We consider *seriatim* and review *de novo* the five counts of Kasowitz's complaint.  *See Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1236 (D.C. Cir. 2018) ("We review the district court's dismissal *de novo*.").

### A. COUNT ONE

Count One alleges that the defendants violated the FCA's reverse false claim provision by "knowingly conceal[ing] or . . . improperly avoid[ing] . . . an obligation to pay" money—namely, civil penalties under TSCA and the Compliance Audit Program.   31 U.S.C. § 3729(a)(1)(G).   The TSCA civil penalty theory is a non-starter.   "[A]n unassessed potential penalty for regulatory noncompliance does not constitute an obligation that gives rise to a viable FCA claim."   *Hoyte v. Am.*

---

[3] The conversion provision specifies that: "any person who . . . has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property . . . is liable to the United States Government."   31 U.S.C. § 3729(a)(1)(D).

*Nat'l Red Cross*, 518 F.3d 61, 67 (D.C. Cir. 2008); *see also United States ex rel. Schneider v. JPMorgan Chase Bank, Nat'l Ass'n,* 878 F.3d 309, 315 (D.C. Cir. 2017) ("[W]e have previously held that contingent exposure to penalties which may or may not ultimately materialize does not qualify as an 'obligation' under the statute."). It is undisputed that the EPA did not assess TSCA penalties against the defendants for failing to report substantial risk information regarding isocyanate chemicals. There was, thus, no FCA "obligation" for the defendants to conceal or avoid.

Kasowitz insists that TSCA automatically imposes an obligation to pay a civil penalty at the moment a defendant commits a violation. The automatic nature of the liability, in Kasowitz's view, makes a TSCA penalty an existing obligation to pay under the FCA—not an unassessed, hypothetical penalty like those we found inadequate in earlier cases, *Hoyte*, 518 F.3d at 66–67 (alleged noncompliance with administrative consent decree); *United States ex. rel. Schneider*, 878 F.3d at 314–15 (alleged noncompliance with terms of settlement agreement between mortgage lenders and federal government). As the Fifth Circuit recently held, however, the EPA—once it has taken successful administrative action—has discretion to impose either an appropriate civil penalty or no penalty at all. *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1040–41 (5th Cir. 2016). Two TSCA provisions make this conclusion inescapable. *First*, TSCA expressly grants the EPA authority to remit or otherwise decline to impose a civil penalty. 15 U.S.C. § 2615(a)(2)(C) (EPA "may compromise, modify, or remit, with or without conditions, any civil penalty which may be imposed under this subsection."); *see also id.* § 2615(a)(2)(B) ("In determining the amount of a civil penalty, the Administrator shall take into account the nature, circumstances, extent, and gravity of the violation or violations and, with respect to the violator, ability

to pay, effect on ability to continue to do business, any history of prior such violations, the degree of culpability, and such other matters as justice may require."). Because the EPA can remit a civil penalty—that is, "pardon or forgive" it, Black's Law Dictionary 1297 (7th ed. 1999)—TSCA does not create an obligation to pay a civil penalty at the moment of a statutory violation; an obligation arises only if and when the EPA decides to impose a penalty.[4] *Accord United States ex rel. Simoneaux*, 843 F.3d at 1040 ("[M]ost regulatory statutes, such as the TSCA, impose only a duty to obey the law, and the duty to *pay* regulatory penalties is not 'established' until the penalties are assessed."). *Second*, TSCA itself recognizes that not every violation results in a civil penalty. Section 2615(b)(1) provides that a willful violator, upon conviction, is subject to a fine or imprisonment "in addition to or *in lieu of any civil penalty* which may be imposed under subsection (a)." 15 U.S.C. § 2615(b)(1) (emphasis added). The phrase "in lieu of any civil penalty" means that not every TSCA violation carries a civil penalty. In short: Kasowitz's theory of automatic civil penalty liability is incorrect.

Kasowitz's Compliance Audit Program claim fares no better. The Compliance Audit Program offered a participating company a reduced civil penalty in exchange for making an overdue submission of substantial risk information. Registration and Agreement for TSCA Section 8(e)

---

[4] Our decision in *3M Company (Minnesota Mining & Manufacturing) v. Browner*, 17 F.3d 1453 (D.C. Cir. 1994), is not to the contrary. There we stated that "[b]ecause liability for the penalty attaches at the moment of the violation, one would expect this to be the time when the claim for the penalty 'first accrued'" for statute of limitations purposes. *Id.* at 1461. *3M Company* addresses when a defendant becomes *liable* for a TSCA penalty; it says nothing about when a defendant becomes obligated to *pay* a TSCA penalty.

Compliance Audit Program, 56 Fed. Reg. at 4129–31. A participating company that failed to submit substantial risk information, however, faced no additional penalty. Instead, the EPA reserved its right to initiate administrative action and seek an ordinary TSCA civil penalty. *Id.* at 4129 ("EPA reserves its rights under TSCA section 16 to take appropriate enforcement action if EPA determines later that the Regulatee was required to submit under TSCA section 8(e) a study or report determined by the Regulatee to be not reportable and therefore not submitted under the TSCA Section 8(e) Compliance Audit Program."). In other words, a manufacturer that withheld substantial risk information was in the same position it would have been in had it not participated in the Compliance Audit Program at all. Kasowitz's Compliance Audit Program claim thus adds nothing to its TSCA civil penalty claim, which fails for the reasons just described.

## B. Count Two

Count Two alleges that the defendants violated the reverse false claim provision by "knowingly conceal[ing] or . . . improperly avoid[ing] . . . an obligation to pay or transmit" property in the form of substantial risk information. 31 U.S.C. § 3729(a)(1)(G). We assume, without deciding, that the substantial risk information identified in the complaint constitutes the defendants' property. And there is no doubt that TSCA establishes an "obligation" to inform the EPA of substantial risk information. 15 U.S.C. § 2607(e) ("Any person who manufactures . . . a chemical substance or mixture and who obtains information . . . that such substance or mixture presents a substantial risk of injury to health or the environment *shall immediately inform* the Administrator." (emphasis added)). The issue is whether the TSCA obligation to inform the EPA of substantial risk information qualifies as an

obligation to transmit property. *See* 31 U.S.C. § 3729(a)(1)(G) (making liable anyone who "knowingly conceals or knowingly and improperly avoids or decreases *an obligation to pay or transmit money or property* to the Government" (emphasis added)). We conclude that it does not and therefore affirm the dismissal of Count Two.

The starting place is the United States Supreme Court's decision in *Cleveland v. United States*, 531 U.S. 12 (2000), which considered whether "making false statements in applying to the Louisiana State Police for permission to operate video poker machines" defrauded the State of Louisiana of property, *id.* at 15. The Court stated that the gaming license regime at issue was a "typical regulatory program": it governed "engagement in pursuits that private actors may not undertake without official authorization," *id.* at 21, and aimed to maintain "public confidence and trust that gaming activities . . . are conducted honestly," *id.* at 20 (quoting La. Stat. Ann. § 27:306(A)(1) (2000)). Louisiana's "core concern," then, was "*regulatory*." *Id.* The Court compared Louisiana's gaming license interest to those interests traditionally protected by property law and found no analog. *Id.* at 21–24. Accordingly, the Court concluded that Louisiana lacked a property interest. *Id.* at 24 ("We reject the Government's theories of property rights," in part, "because they stray from traditional concepts of property.").

For similar reasons, we conclude that TSCA does not require the transmission of a property interest. TSCA gives the EPA one—and only one—interest in substantial risk information: the right to be informed of it. 15 U.S.C. § 2607(e). And the EPA's "core concern is regulatory." *Cleveland*, 531 U.S. at 20 (emphasis omitted). It does not acquire information for its own economic benefit but to carry out its regulatory mission. TSCA's substantial-risk-reporting

requirement facilitates the EPA's role in "regulat[ing] chemical substances and mixtures which present an unreasonable risk of injury to health or the environment." 15 U.S.C. § 2601(b)(2). Like the gaming license at issue in *Cleveland*, moreover, the EPA's statutory right to be informed of substantial risk information does not constitute a traditional property right. Granted, the law has long protected property interests in limited forms of information. *E.g.*, *Carpenter v. United States*, 484 U.S. 19, 26 (1987) ("Confidential business information has long been recognized as property."); *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (trade secrets). But the EPA's statutory right to be informed of information is not among them. Indeed, Kasowitz cites no precedent that recognizes as a property right a government agency's statutory entitlement to receive information from a regulated party. Accordingly, TSCA's command to "inform" the EPA of substantial risk information is not an obligation to "transmit" an interest in "property." *Cf. Patrick v. Comm'r of Internal Revenue*, 799 F.3d 885, 889 (7th Cir. 2015) (information did not constitute property because plaintiff "had no right to stop anyone else from using it").

Kasowitz's property claim has a second major flaw: the FCA is not "a vehicle for punishing garden-variety . . . regulatory violations." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2003 (2016). Keeping with that principle, in *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189 (10th Cir. 2006), the Tenth Circuit rejected an FCA relator's effort to locate a government property right in a prosaic regulatory requirement, *id.* at 1205. The relator there sued Conagra for modifying export certificates issued by the United States Department of Agriculture (Agriculture). *Id.* at 1192–95. Under applicable regulations, Conagra had to return the certificates to Agriculture once it concluded that the modifications were necessary. *See id.* at 1204–05. The

relator claimed that "[b]y making changes on the original certificates instead of returning them . . . Conagra employees avoided an obligation to 'transmit . . . property to the Government.'" *Id.* at 1205 (third alteration in original) (quoting 31 U.S.C. § 3729(a)(7)). The Tenth Circuit rejected the relator's novel idea that the certificates constitute government property, explaining that "applying the [FCA] in this fashion would stretch it far beyond its intended purpose." *Id.* So too here. Regulatory reporting requirements, including TSCA's requirement to report substantial risk information, are a mainstay of regulatory agencies. *E.g.*, 29 U.S.C. § 1024(a)(1) (ERISA); 42 U.S.C. § 7671b(b) (Clean Air Act); 42 U.S.C. § 11004 (EPCRA). And Kasowitz's property rights theory, if adopted, would make any violation of countless reporting requirements actionable under the FCA. Absent ample evidence of congressional intent, we will not interpret the term "property" in a way that fundamentally changes the relationship between the FCA and "garden-variety . . . regulatory violations." *Universal Health Servs., Inc.*, 136 S. Ct. at 2003.

## C. COUNTS THREE, FOUR AND FIVE

Count Three alleges that the defendants violated the FCA's conversion provision by failing to deliver money (TSCA civil penalties) or property (substantial risk information) to the EPA. To be liable under the conversion provision, however, a defendant must possess "property or money used, or to be used, by the Government." 31 U.S.C. § 3729(a)(1)(D). But the defendants did not possess any such money or property. The EPA did not assess civil penalties against the defendants and no obligation to pay the EPA any money automatically arose based on the defendants' alleged TSCA violations: they did not possess money to be used by the government. *See supra* Section II.A. Likewise, TSCA did

not require the defendants to transmit any property interest in the alleged substantial risk information to the EPA: they did not possess property to be used by the government. *See supra* Section II.B. Count Three was therefore properly dismissed.

The remaining counts merit only brief discussion. Kasowitz made no argument in its opening brief that the district court erred in dismissing Count Four and, accordingly, any challenge to Count Four is forfeit. *Al-Tamimi v. Adelson*, 916 F.3d 1, 6 (D.C. Cir. 2019) ("A party forfeits an argument by failing to raise it in his opening brief."). To succeed on Count Five, which alleges that the defendants violated the FCA conspiracy provision, Kasowitz had to establish an underlying FCA violation. 31 U.S.C. § 3729(a)(1)(C) ("[A]ny person who . . . conspires to commit a violation of" other FCA provisions "is liable to the United States Government."); *cf. Halberstam v. Welch*, 705 F.2d 472, 479 (D.C. Cir. 1983) ("Since liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy is not independently actionable; rather, it is a means for establishing vicarious liability for the underlying tort."). Our rejection of all of Kasowitz's underlying theories of liability mandates that we affirm the dismissal of Count Five.

For the foregoing reasons, we affirm the judgment of the district court dismissing the complaint.

*So ordered*.